## State of Vermont v. Charles Woodard

[353 A.2d 321]

No. 232-74

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed February 4, 1976

*John A. Rocray,* Windham County State's Attorney, and *Craig R. Wenk,* Deputy State's Attorney, Brattleboro, for the State.

*Robert Edward West,* Defender General and *Robert M. Paolini,* Deputy Defender General, Montpelier, for Defendant.

**Smith, J.** The defendant, Charles Woodard, was charged with violating 13 V.S.A. § 3201, specifically with the rape of a female person over the age of 16, in the Town of Marlboro, Windham County, Vermont. After a plea of not guilty on September 26, 1973, trial was commenced in the District Court of Vermont, Windham Circuit, on April 4, 1974. The jury returned with a verdict of guilty, and the defendant was sentenced to zero to ten years. He has duly taken his appeal to this Court from the jury verdict and resulting judgment.

The first question presented to this Court by the brief of the defendant and his oral argument is whether testimony by a former juror resulted in denial of trial by an impartial jury.

One of the jurors, Robert Abel, was called as a witness in the case and testified to having overheard a telephone conversation in the lobby outside the courtroom between the defendant and an unknown party. The juror testified that the defendant stated over the telephone, " 'I'm hung unless I have an alibi' or 'I'm hung and I've got to have an alibi'. I'm not certain which it was."

Defendant's briefed contention is that the juror should not have been allowed to testify as a witness. This Court has recently held in *State* v. *Kelly,* 131 Vt. 582, 585, 312 A.2d 906 (1973), that there is no rule in Vermont generally exempting judges from testifying. However, the rule is that a judge may not be a witness in a cause before him. It necessarily follows that a juror is a competent witness, but a juror testifying in a case on which he is sitting must then take no further part in the determination of matters before the jury. *State* v. *Bissell,* 106 Vt. 80, 95, 170 A. 102 (1934).

But the real question presented to us is whether the defendant was denied trial by an impartial jury in violation of his

constitutional right. Vt. Const. ch. I, art. 10; U.S. Const. Amend. VI., because of Abel's continued presence on the jury during the period after he overheard the defendant's telephone call and the time he, Abel, took the stand. Although this question was not raised by the defendant in his brief, it was presented in oral argument. While counsel for the defendant did not move for a mistrial preceding the testimony of the juror witness, he did object "to the entire line of questioning", which might well have alerted the trial court to the question involved. But even if the defendant were ineffectual in raising the issue below, and here, we may consider it if we find the "glaring error" spoken of in *State* v. *Morrill,* 127 Vt. 506, 511, 253 A.2d 142 (1969), "so grave and serious that it strikes at the very heart of the [defendant's] constitutional rights."

The record before us establishes that juror Abel overheard the telephone call made by the defendant in the early morning of the second day of trial. After hearing the call, he resumed his seat in the jury and listened to the testimony of two witnesses. Only after sitting with the jury after hearing the telephone conversation to which he later testified and hearing the testimony of two other witnesses in the case did he then disclose, late in the morning, to the presiding judge the information which he had obtained. The juror was not questioned as to whether he had imparted the information he had received to other jurors sitting on the case before his contact with the court or expressed any opinion to his fellow jurors on what effect the information he had received might have on their future deliberations.

As this Court stated in *State* v. *Ovitt,* 126 Vt. 320, 324, 229 A.2d 237 (1967):

A jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge, based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon

the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. It is said to be "imperatively required to secure verdicts based on proofs taken openly at the trial free from all danger of extraneous influences." *Panko* v. *Flintkote Co.,* 7 N.J. 55, 80 A.2d 302.

In the same opinion the Court also said, "When dealing with the integrity of the jury a person has only to show the existence of circumstances capable of prejudicing the deliberate function of the jury. He is not required to prove that they actually did so." *Id.* at 324–25.

There is nothing in the record before us to indicate that juror Abel did disclose to the other jurors what he had overheard in the telephone conversation made by the defendant or attempt to influence them in any way. Once he had disclosed the information he had received to the trial court that court rightly withdrew him from the jury, and he took no part in their further deliberations.

But with juror Abel remaining with the jury, listening to other testimony in the case, and not disclosing to the court until some hours later the information which subsequently constituted his testimony, circumstances existed capable of influencing the deliberate function of the jury. The defendant did not have to show that the circumstances here existing actually did influence the jury. All that had to be shown was that such circumstances could have had the capacity to influence the deliberation and verdict of the jury. In the absence of proof to the effect that the jury was not influenced by the circumstances here, the danger remained that the capacity to do so did exist. The question is not whether the jury result was influenced by the fact that the juror witness remained one of their number but whether his continued presence had the capacity of influencing the result of their deliberations, and the answer to that must be in the affirmative.

Only suspicion exists as to any influence upon the jury verdict. But, like Caesar's wife, a jury must remain free and untainted by even suspicion. While there is no proof that extraneous influences affected the jury verdict, there were circumstances to show that such a danger did exist.

■ No right is more fundamental to a defendant than a fair trial by jury, and the law is most sensitive to any infringement or impairment of that fundamental and constitutional right. It is the duty of this Court, when confronted with a record that discloses even a possible infringement of a defendant's right to a jury free and untainted by any suspicion of extraneous influences, to set aside a guilty verdict. For the reason that the verdict below must be set aside and a new trial granted to the defendant, it is not necessary for us to consider any other questions raised by this defendant.

*Reversed and remanded for a new trial.*