### State of Vermont v. Robert Michael Onorato

[453 A.2d 393]

No. 253-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed October 14, 1982

*Raymond G. Bolton,* Bennington County State's Attorney, Bennington, *John J. Easton, Jr.,* Attorney General, and *James R. Crucitti,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

102

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Montpelier, for Defendant-Appellant.

**Underwood, J.** The defendant was charged with the crime of sexual assault. 13 V.S.A. § 3252(1)(A). He was found guilty by a jury, and he timely appeals from the judgment thereon. As grounds for appeal the defendant claims that (1) the State did not prove beyond a reasonable doubt the identity of the defendant as the person who committed the offense, (2) the trial court erred in denying the defendant the right to introduce expert testimony on the issue of reliability of eyewitness identification, and (3) that he was denied his constitutional right to a fair and impartial jury. We disagree with all three of defendant's contentions and affirm.

## I.

Defendant's first contention was raised at the close of the State's case, and again at the conclusion of his case, by a motion for judgment of acquittal under V.R.Cr.P. 29. The issue on such a motion is "whether, taking the evidence in the light most favorable to the State and excluding modifying evidence, the State has introduced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State* v. *Sorrell,* 139 Vt. 648, 649, 432 A.2d 1188, 1189 (1981) (quoting *State* v. *Eaton,* 134 Vt. 205, 206, 356 A.2d 504, 505 (1976)). The defendant claims the denial of his motion was error. As stated above, we disagree.

Taking the evidence in the light most favorable to the State, the record discloses the following. The nine-year-old victim observed his assailant, the defendant, for an appreciable period of time at close range both before and after the sexual assault. After being assaulted the victim went home and told his mother about the incident, whereupon she took him to a local restaurant to telephone the police. While inside the restaurant the boy spotted his assailant, the defendant, among a group of persons and pointed him out. Three adult witnesses corroborated the boy's testimony of this occurrence.

Later, at the Bennington Police Station, the victim was shown nine photographs. All the photographs displayed to the boy were of males without glasses and of the approximate age

of the defendant. The victim promptly identified the photograph of the defendant as that of his assailant.

Finally, in court the victim identified the defendant as his assailant, and identified the shirt and pants which the police had taken from the defendant as those his assailant was wearing on the night of the attack.

Defendant submits that there are serious discrepancies between the victim's original description of the assailant, given at the first trial, which was declared a mistrial, and the final description given at the second trial. Specifically, defendant argues that the discrepancy in the victim's description of the shirt his assailant was wearing cast a reasonable doubt on the issue of identity. In this regard, defendant points out that he was wearing a red plaid shirt on the night of the crime, and yet the victim testified at the first trial that his assailant's shirt was "square red and square black." It was not until the second trial that the victim testified that there was no black on the shirt. However, the defendant ignores the victim's prior consistent statements regarding the shirt's color. The police officer who took the victim's statement on the night of the assault testified that the boy told him the shirt was a "red shirt with squares on it." He stated that the boy did not use the word "black" in describing the shirt. Another witness, a man who dated the victim's mother and aided her and the boy on the night of the crime, testified that the boy told him that the assailant was wearing a red plaid shirt.

Lastly, defendant argues that despite the victim's identification, the other evidence places him sitting on a stone wall with a third party at the time of the assault. This argument is based solely on conjecture and speculation as to when certain events occurred and how long they lasted. We find no merit in it.

■■ The credibility of the victim's testimony and the weight to be given it were for the jury's determination. *State v. Eaton, supra*, 134 Vt. at 208–09, 356 A.2d at 506. It was for them to decide whether the victim's identification of the defendant as his assailant, taken together with his prior inconsistent statement and defendant's denial of the crime, raised a reasonable doubt as to defendant's guilt in their minds. It cannot be said, in the instant case, "that there was no evidence

fairly and reasonably tending to show the defendant's guilt or that the jury, upon consideration of it, was not warranted in finding him guilty beyond a reasonable doubt." *Id.* at 209, 356 A.2d at 506. Thus, the trial court did not err as a matter of law in denying the defendant's motion for judgment of acquittal under V.R.Cr.P. 29.

## II.

Prior to trial, defendant moved in limine for the court to permit introduction of the testimony of an expert on eyewitness testimony, and in particular, on the effects of stress on the reliability of human perception. The purpose of the offer was to show that the victim may have been mistaken in his identification of the defendant as his assailant. The court refused to admit the proffered testimony, stating, *inter alia,* that (1) it was not within the realm of expert testimony as its subject matter is within the jury's ability to determine, and (2) it would be of little real help to the jury but might be given great weight because of its so-called expert status, thereby invading the province of the jury. See *United States* v. *Brown,* 501 F.2d 146 (9th Cir. 1974); *State* v. *Porraro,* 404 A.2d 465 (R.I. 1979). Defendant contends that the court's denial constitutes error.

The decision of whether to admit expert testimony is committed to the trial court's discretion and will not be disturbed "unless it is made to appear from the evidence that it was clearly erroneous or founded on an error of law." *Currier* v. *Letourneau,* 135 Vt. 196, 203, 373 A.2d 521, 526 (1977). In exercising its discretion the trial court must determine as a preliminary matter whether the proffered testimony will shed light on a subject matter that is beyond the ken of the average lay person. Next, the trial court must be satisfied that the expert has sufficient skill, knowledge and experience to make it appear his opinion will probably aid the jury in its search for the truth. McCormick, Evidence § 13, at 29–30 (2d ed. 1972).

As previously noted, the victim's identification of the defendant as his assailant resulted from the boy's observation of the defendant from close proximity, in the daylight, and for

a substantial period of time. Furthermore, this observation occurred before any stressful situation arose. Making an identification under these circumstances is a part of the common experience of most lay people. Thus, we hold that under the facts in this case the trial court did not err in ruling that the jury had the ability to assess the reliability of the victim's identification of the defendant, without the aid of expert testimony as to how stress may affect human perceptional processes. See *State* v. *Fernald*, 397 A.2d 194, 197 (Me. 1979).

## III.

The defendant's third contention, that he was denied his constitutional right to a fair and impartial jury, is based on the following facts. After an overnight recess, the trial judge asked the jurors if they had become aware of any information about the case that they had no knowledge of at the time of voir dire. In response to which, one juror replied, "[j]ust that someone had mentioned that this was a second trial. I wasn't aware of that." The judge immediately admonished the jury that any prior proceedings had nothing to do with the instant case. Further, he questioned the jury to determine if any one of them had been improperly influenced. He asked: "Is there any reason why you cannot fairly and impartially evaluate the evidence in the case and deliver a just verdict?" The jury indicated that there was no such reason. The judge then called counsel to the bench. He asked defense counsel if he had any problems with the answers given by the jury to which the latter replied in the negative. The judge then stated that he concluded no prejudice could have arisen, but in any event he would give a cautionary jury instruction, as requested by defense counsel, in his final charge.

The defendant contends for the first time on appeal that the trial judge should have specifically obtained a waiver of any claim of possible prejudice from the defendant himself, rather than from his attorney. Failure to do so, he now argues, constituted reversible error.

In support of his contention, the defendant relies on *State* v. *Prime*, 137 Vt. 340, 403 A.2d 270 (1979), and *State* v. *Woodard*, 134 Vt. 154, 353 A.2d 321 (1976). He claims that

these cases stand for the propositions that (1) where a suggestion of taint or bias is raised regarding an empanelled jury, only the defendant may waive the objection, *State* v. *Prime, supra,* 137 Vt. at 343, 403 A.2d at 272, and (2) that in such a situation reversible error does not depend on a showing of actual prejudice, but that the defendant need only show the existence of circumstances capable of prejudicing the deliberative function of the jury. *Id.; State* v. *Woodard, supra,* 134 Vt. at 158, 353 A.2d at 323–24. Defendant is correct. However, the holdings of *Prime* and *Woodard* are not applicable in the instant case. Those holdings are limited to situations where the trial court, upon discovering the possibility of jury prejudice, fails to voir dire the jury to determine if in fact any prejudice has been created. Absent this examination, the trial judge lacks a basis for determining if any prejudice exists, and consequently this Court has no record from which it can determine if the jury was fair and unbiased. Where such basis is lacking, in order to assure a criminal defendant his constitutional right to trial by impartial jurors, we held in *Prime* that only a personal waiver of the possible taint will prevent a reversal of the jury's verdict.

In the instant case the court, after learning of the potential problem, examined the jurors in the presence of the defendant and his attorney to determine if any prejudice had been created. It concluded that none had. Having made this determination, and having exposed the necessary basis for it through voir dire of the jury, the court had no further duty to obtain a waiver of possible prejudice from the defendant personally. Although it is true that "[t]he right to an unbiased jury is a personal right which may be waived only by the defendant . . . . ," *State* v. *Prime, supra,* 137 Vt. at 343, 403 A.2d at 272, here the court had determined, based upon its exchange with the jury, that each juror still remained unbiased. Therefore, the question of waiver never arose, and thus the only issue presented for our determination is whether the defendant has established the actual existence of jury bias. *Murphy* v. *Florida,* 421 U.S. 794, 800 (1975).

In order to do this, the defendant must show that the jury is unable to decide the case solely on the evidence pre-

sented at trial. *State* v. *Hohman*, 138 Vt. 502, 510, 420 A.2d 852, 859 (1980). In the instant case, the defendant failed to meet this burden. He did not ask leave of the trial court to conduct his own voir dire of the jury for subsequent prejudice, nor did he move for a mistrial on the grounds of juror bias. Furthermore, the record reveals that the jury gave the court its assurance of impartiality. Although such assurances can be rebutted, this is accomplished only where the defendant demonstrates the actual existence of bias in the minds of the jurors. *Murphy* v. *Florida, supra.* Here, the defendant's rebuttal consists solely of speculation as to how the jury might be prejudiced by the information that this was his second trial. As we said in *State* v. *Dragon*, 135 Vt. 168, 170, 376 A.2d 12, 13–14 (1977), "[t]here must be a demonstrable showing of prejudice or of the existence of circumstances capable of producing prejudice and not mere speculation."

 Thus, in the absence of any indication of bias on the record, we hold that defendant was not denied his constitutional right to a fair and impartial jury.

*Judgment affirmed.*