### State of Vermont v. Lawrence T. Schwanda

[499 A.2d 779]

No. 84-002

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed August 9, 1985

*Raymond G. Bolton*, Bennington County State's Attorney, and *Ralph H. Sheppard*, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Frederick J. Glover*, Ludlow, for Defendant-Appellant.

**Allen, C.J.** Defendant Lawrence Schwanda appeals his conviction for driving while under the influence of intoxicating liquor, 23 V.S.A. § 1201(a)(2), on the ground that the trial court erroneously denied his motions for mistrial based on two instances of alleged juror misconduct. We affirm.

The first incident occurred just prior to defendant's trial when one of the jurors approached the state's attorney and initiated a brief conversation with him in full view of the other jurors and defendant and his attorney concerning a voir dire which had taken place on the previous day in an unrelated matter. The juror

informed the state's attorney that she had been mistaken when she indicated that she believed that she was related to a witness.

Thereafter, before the start of the trial the court asked the jurors whether they had learned anything about the case, the defendant or the lawyers, and whether anyone had become aware of any information that might tend to prejudice or influence them regarding the case since their selection three weeks earlier. The court further asked:

> I take it no one has been influenced in any way in connection with the matter nor has anyone approached you about the case?

There was no affirmative response to the court's questioning. After the jury was sworn, counsel for defendant approached the bench and requested a mistrial because the juror had approached the prosecutor in a "friendly manner" in front of other members of the jury. He argued that the jury was "tainted" and thus rendered unable to reach a fair or impartial verdict. Without conducting any further examination of the jury, the court ruled that the conduct was not prejudicial, but it gave defendant permission to renew the motion should there be an adverse verdict.

After the luncheon recess, while entering the jury box with the other jurors, the same juror approached and initiated a brief conversation with the court reporter. Defendant again moved for mistrial. The court reporter explained to the court, in chambers, that the juror worked as a nurse for a local doctor and knew that the court reporter's wife had recently given birth. The juror had asked to see pictures of the new baby, and the court reporter had promised to show them to her later. Defendant complained that the effect of this contact was "cumulative" and prejudicial. The court, without examining the jury, concluded that defendant had not been prejudiced by the second incident and denied the motion.

After suffering an adverse verdict, defendant renewed his motions, citing *State* v. *Woodard*, 134 Vt. 154, 353 A.2d 321 (1976), for the proposition that defendant had a right to trial by a jury free from any suspicion of taint by extraneous influences, and *State* v. *Ovitt*, 126 Vt. 320, 229 A.2d 237 (1967), for the proposition that mere capability of jury prejudice requires reversal.

In *State* v. *Woodard, supra,* a juror overheard the defendant discuss on the telephone, during a recess, his urgent need to pre-

sent an alibi defense. The juror rejoined the jury before informing the judge some hours later of what he had heard. The juror eventually was excused from the jury and called as a prosecution witness. Asserting that a jury must be free and untainted by suspicion "like Caesar's wife," *id.* at 157, 353 A.2d at 323, this Court concluded that the incident had the capacity to influence deliberations and therefore ordered a new trial.

In *State* v. *Ovitt, supra,* the court officers had purchased liquor for the jurors to have with their meals during the trial. This Court felt such acts were "capable of influencing the jurors favorable to the State, and thereby capable of prejudicing the deliberative function of the jury." *Id.* at 325, 229 A.2d at 241. Considering the combined effect of that irregularity and other errors committed by the trial court, this Court concluded the verdict was "tainted with suspicion," and reversed and remanded for a new trial. *Id.*

Motions for mistrial are addressed to the trial court's sound discretion and should not be granted absent a showing of prejudice. *State* v. *Chambers,* 144 Vt. 377, 381, 477 A.2d 974, 977 (1984). To justify reversal, an abuse of discretion must be shown. *Sunday* v. *Stratton Corp.,* 136 Vt. 293, 306, 390 A.2d 398, 405 (1978).

As this Court stated in *State* v. *Woodard, supra,* 134 Vt. at 157, 353 A.2d at 323, the proponent of a motion for mistrial must show that an irregularity—i.e., anything creating "any suspicion of extraneous influences"—had the capacity to influence jury deliberations. *Id.* at 158, 353 A.2d at 323-24. If an irregularity is shown, then, in order to avoid a mistrial, the opposing party must show that the irregularity in fact had no effect on the jury. See *id.* at 157, 353 A.2d at 323 ("In the absence of proof to the effect that the jury was not influenced by the circumstances here, the danger remained that the capacity to do so did exist.").

In this case, the juror's brief conversation with the state's attorney concerned a totally unrelated matter. Even assuming that further inquiry was required, an examination was made and the negative response clearly indicated that the jury had not been "influenced."

The subject matter of the conversation with the court reporter was even more innocuous and could not have created "any suspicion of extraneous influences" as required by *State* v. *Woodard, supra,* 134 Vt. at 158, 353 A.2d at 323-24.

While such conversations are inadvisable and are to be guarded against, they did not in this instance meet the threshold test of capacity to influence.

The irregularity to be guarded against is taint by external causes tending to disturb the exercise of deliberate and unbiased judgment. *Mattox* v. *United States*, 146 U.S. 140, 149 (1892). The contact or tampering which is deemed presumptively prejudicial must concern a matter pending before the jury. *Remmer* v. *United States*, 347 U.S. 227, 229 (1954). The conduct here complained of was totally unrelated to the case at hand. The potential for prejudice falls well below the likelihood of harm contained in the remark made in *State* v. *Grant*, 135 Vt. 222, 223, 373 A.2d 847, 849 (1977) (probation officer, in presence of jury, asked defendant if he had been seeing his psychiatrist), which this Court held was incapable of prejudicing the jury.

■ The lower court, having determined that the conversation between the court reporter and juror was incapable of influencing the deliberation process, was not required to voir dire to ascertain whether there had been any prejudicial impact. Having correctly determined that the possibility of taint or bias could not have resulted from the contact, the lower court was not obligated to conduct any further examination.

*Affirmed.*

**Hill, J.,** dissenting. For the reasons stated below I respectfully dissent from the majority opinion.

As this Court stated in *State* v. *Ovitt*, 126 Vt. 320, 229 A.2d 237 (1967):

> A jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge, based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. It is said to be "imperatively required to secure verdicts based on proofs taken openly at the trial

free from all danger of extraneous influences." *Panko* v. *Flintkote Co.*, 7 N.J. 55, [62,] 80 A.2d 302 [, 306 (1951)].

*Id.* at 324, 229 A.2d at 240, *quoted in State* v. *Woodard*, 134 Vt. 154, 156-57, 353 A.2d 321, 323 (1976). "When dealing with the integrity of the jury a person has only to show the existence of circumstances capable of prejudicing the deliberative function of the jury. He is not required to prove that they actually did so." *State* v. *Brisson*, 124 Vt. 211, 215, 201 A.2d 881, 883 (1964), *quoted in Ovitt, supra*, 126 Vt. at 324-25, 229 A.2d at 240, and *Woodard, supra*, 134 Vt. at 157, 353 A.2d at 323. "[L]ike Caesar's wife, a jury must remain free and untainted by even suspicion." *Woodard, supra*, 134 Vt. at 157, 353 A.2d at 323.

The conversations in the instant case had the capacity to influence the result. Regardless of the content of the conversations, there was nonetheless the capacity to influence by virtue of the fact that the conversations occurred in the presence of the other jurors. There thus existed the potential of influencing their vote.

Upon learning of each conversation, the court took no action to inquire about any prejudicial effect each may have had. The question quoted in the majority opinion, which was posed to the jury by the court, was asked *before* the court was made aware of the first conversation, and before the defendant had moved for a mistrial. Furthermore, the juror herself was never questioned by the court. The only information the court had in ruling on the defendant's motions were representations by the state's attorney and the court reporter. Such information is insufficient to support the court's determinations that the conversations lacked the capacity to prejudice the jury.

Any claim of influence could easily have been resolved by a proper voir dire or by the calling of another jury. The court's failure to take these steps, in my opinion, constituted error and a new trial should be ordered. I therefore cannot join in the majority opinion.

I am authorized to say that Justice Gibson joins in this dissent.