## State of Vermont v. Brian Jay Corey

[561 A.2d 87]

No. 86-461

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed January 27, 1989

Motion for Reargument Denied April 5, 1989

*James P. Mongeon, Rutland County State's Attorney*, and *Gary Shattuck, Law Clerk (On the Brief)*, Rutland, for Plaintiff-Appellee.

*Charles S. Martin* and *John Boese, Law Clerk (On the Brief)*, of *Martin and Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** During the jury trial of defendant on charges of first degree murder and aggravated assault, jurors were improperly exposed to evidence while deliberating. The trial court, after a review of the facts and a conference with the attorneys, sua sponte declared a mistrial. Before the mistrial was announced in open court the jury reached a verdict. Indicating that he did not consider it to be the verdict of the case, the trial court judge received the verdict in open court. The jury found defendant not guilty on all counts. Defendant moved for a judgment of acquittal on the not guilty verdict or, in the alternative, for dismissal of the charges and the motion was denied. The defendant then requested permission to appeal pursuant to V.R.A.P. 5(b)(1) and this motion was granted. The controlling question as framed by the trial court is whether the defendant may again be tried on the instant charges. The question is answered in the affirmative.

The defendant was arrested and charged with first degree murder and aggravated assault in November, 1985. Near the end of his trial on these charges, while the jury was deliberating, a juror knocked on the jury room door and asked the sheriff for a demonstration of how far 92 feet was. This distance was of particular interest since evidence at trial established 92 feet as the distance from which the defendant allegedly shot the victim. In response to the juror's request, and without notice to the court, the sheriff paced off an approximation of the distance in the hallway outside the jury room.

The court first noticed what was transpiring in the hallway when the sheriff paced past chambers. Counsel informed the court that some members of the jury were in the corridor. After observing the jurors watching the sheriff, the court directed them back into the jury room.

The court then conferred with counsel, summoned the jury into the courtroom, instructed them to disregard whatever they saw in the corridor and to "take their deliberations back to the point where they were prior to the incident." It was the court's intent, in providing the instruction, to minimize any taint which may have occurred as a result of the incident while examining the situation more carefully.

While the jury continued deliberating, the court held a further conference in chambers to determine exactly what had occurred in the hallway. With a more accurate impression of the events and after examining relevant precedent, the court was of the opinion that a mistrial was required. At this point, during the chambers conference, the court ordered the mistrial sua sponte.[1] Before the mistrial was declared in open court, the court was notified that the jury had reached a verdict.

After learning that the jury had arrived at a verdict, the defendant asked the court to accept the verdict and decide whether to declare a mistrial after it was announced. The court denied the defendant's request, but received the jury's verdict in open court "solely for the purpose of completing the record." On appeal, the defendant challenges the court's declaration of a mistrial as erroneous and in violation of his constitutional right to be free from double jeopardy. While the first issue is beyond the scope of the controlling question, it was raised in the defendant's motion for permission to appeal and must be resolved in order to answer the question. *State* v. *Dreibelbis,* 147 Vt. 98, 99-100, 511 A.2d 307, 308 (1986).

---

[1] The court based its decision to declare a mistrial on its determinations that:

> The actions of the Sheriff cast an incurable taint upon the jury by improperly presenting evidence to the jury during the deliberation process. This evidence was presented to some members of the jury outside of the presence of the [c]ourt, counsel or the [d]efendant. There was no opportunity to cross-examine regarding the evidence. Further, the evidence was of a type which the [c]ourt would have excluded even if properly raised. This is because of the perception differences caused by the location of the demonstration, the lighting differences, and the potential inaccuracy of the Sheriff's estimation.

■ Defendant first argues that the admittedly erroneous actions of the sheriff in pacing off 92 feet were harmless and therefore insufficient as a basis for the declaration of a mistrial. "Motions for mistrial are addressed to the trial court's sound discretion and should not be granted absent a showing of prejudice." *State v. Schwanda*, 146 Vt. 230, 232, 499 A.2d 779, 781 (1985); see also *State v. Chambers*, 144 Vt. 377, 381, 477 A.2d 974, 977 (1984) (no reversible error in denial of motion for mistrial since it did not result in prejudice to movant); *State v. Covell*, 142 Vt. 197, 199, 453 A.2d 1118, 1119 (1982) (defendant failed to demonstrate prejudice sufficient to justify reversal of court's denial of his motion for mistrial). To demonstrate prejudice, "the proponent of a motion for mistrial must show that an irregularity — i.e., anything creating 'any suspicion of extraneous influences' — had the capacity to influence jury deliberations." *Schwanda*, 146 Vt. at 232, 499 A.2d at 781 (quoting *State v. Woodard*, 134 Vt. 154, 158, 353 A.2d 321, 323-24 (1976)). "If an irregularity is shown, then, in order to avoid a mistrial, the opposing party must show that the irregularity in fact had no effect on the jury." *Id.* The defendant not only failed to demonstrate that the conduct had no effect on the jury, but agreed that "we have a mistrial caused by court misconduct" before the mistrial was declared. Here, the sheriff's demonstration bore directly on defendant's trial theory of self defense and, as a result, had the capacity to affect his rights prejudicially. As such, the error was not harmless and constituted adequate grounds for the declaration of a mistrial. *State v. Demars*, 101 Vt. 229, 232, 143 A. 311, 314 (1928) (such misconduct by a sheriff in charge of a jury in a criminal case, during their deliberations in arriving at a verdict, tends to "poison the fountain of justice" and will not be tolerated). A trial judge properly exercises his discretion to declare a mistrial if a verdict of conviction could be reached but would have to be reversed on appeal. *Illinois v. Somerville*, 410 U.S. 458, 471 (1973).

■ Defendant next argues that any influence the sheriff's actions had on the jury was cured by the trial judge's instruction to disregard the events in the hallway. We disagree. "The harm, once done, is not necessarily erased nor the error corrected by a subsequent charge to the jury to disregard it." *State v. Garceau*, 122 Vt. 303, 307, 170 A.2d 623, 625 (1961). In this case, it was reasonable for the court to find the jury was irreparably tainted

by the events occuring in the hallway and that any attempt by the court to cure it would then have been futile.

Defendant finally argues that the court's declaration of a mistrial without dismissing the charges against him violated his constitutional as well as statutory rights against double jeopardy. We find defendant's argument unpersuasive.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The protection against double jeopardy found in this clause has been held applicable to the states through the Fourteenth Amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794-96 (1969); *State* v. *Lebo,* 129 Vt. 449, 450, 282 A.2d 804, 805 (1971). Accordingly, federal standards governing double jeopardy apply.

No protection comparable to that contained in the Fifth Amendment has been found in the provisions of the Vermont Constitution. See *State* v. *Ramsay,* 146 Vt. 70, 73 n.1, 499 A.2d 15, 17 n.1 (1985). Nor has 13 V.S.A. § 6556, barring subsequent prosecutions for the same offense after an acquittal on the merits, been interpreted by this Court to provide any greater protection in the context of mistrials than does the Fifth Amendment.[2] With this in mind, defendant's claim of violation of his double jeopardy rights must be evaluated against current federal standards.

The impact of a declaration of mistrial by a trial court on a defendant's double jeopardy rights was first addressed in *United States* v. *Perez,* 9 Wheat. 579 (1824). In that landmark case, Justice Story provided a standard for ascertaining when a trial court may grant a mistrial over a defendant's objection without violating Fifth Amendment protections against double jeopardy. According to Justice Story, "the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act . . . . " *Id.* at 580.

---

[2] Section 6556 provides:

  A person shall not be held to answer on a second complaint, information or indictment for an offense of which he was acquitted by a jury upon the merits on a former trial. Such acquittal may be pleaded in bar of a subsequent prosecution for the same offense, notwithstanding defects in the form or substance of the complaint, information or indictment on which he was acquitted.

■ The protections of the double jeopardy clause come into play when jeopardy attaches. During a trial by jury, jeopardy attaches with the empaneling and swearing in of the jury. *Downum* v. *United States,* 372 U.S. 734 (1963). Once jeopardy attaches, the defendant has a " 'valued right to have his trial completed by a particular tribunal.' " *Arizona* v. *Washington,* 434 U.S. 497, 503 (1978) (quoting *Wade* v. *Hunter,* 336 U.S. 684, 689 (1949). This right is not absolute, however, and must be balanced against the public interest in insuring that the prosecutor receive one full opportunity to present his case against the accused. *Id.* at 505; *Dunkerley* v. *Hogan,* 579 F.2d 141, 145 (2d Cir. 1978), *cert. denied,* 439 U.S. 1090 (1979).

■ Since *Perez,* no rule of thumb has been developed to aid in the application of the "manifest necessity" standard.[3] *Somerville,* 410 U.S. at 462. It is clear, however, that a trial judge possesses broad discretion in determining whether or not discharge of a jury is justified, *id.,* and this Court must accord the highest degree of respect for a trial judge's evaluation of the degree of necessity for a mistrial. See *Arizona,* 434 U.S. at 510. Because it is clear that a verdict of conviction rendered below would have had to be reversed on appeal due to the improper conduct, the trial court's declaration of a mistrial was proper.

*The controlling question certified for review is answered in the affirmative; cause remanded.*

---

[3] As the United States Supreme Court noted in *Somerville,* "This formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." 410 U.S. at 462.