2011 VT 94

## State of Vermont v. Trevor Herrick

[30 A.3d 1285]

No. 10-252

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 12, 2011

*Marc D. Brierre*, Rutland County State's Attorney, Rutland, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals from a conviction, after jury trial, of second-degree murder and a sentence of imprisonment for twenty-two years to life. Defendant, who was romantically involved with the victim's wife, fatally stabbed the victim following a verbal and physical altercation. Just as the jury entered the courtroom to be sworn, three people walked in wearing t-shirts memorializing the victim. Following general and individual voir dire, defendant moved for mistrial, which the trial court denied. On appeal, defendant argues: (1) the trial court's failure to instruct the jury to consider defendant's individual characteristics in connection with its "adequate provocation" charge for the mitigating defense of passion-provocation manslaughter was plain error, and (2) the court erred in denying defendant's motion for mistrial when the jury was exposed to potentially prejudicial extraneous influence and the court's post-voir dire findings did not eliminate the possibility that jurors were in fact influenced. We affirm.

¶ 2. Defendant had been involved in a romantic relationship with the victim's wife for about four or five years. On the morning of April 20, 2009, defendant received a message with a telephone number. When he called the number, he reached the victim, who told defendant to meet him at 2:35 p.m. that afternoon in the parking lot of a Rutland shopping mall.

¶ 3. Defendant got a knife with a three-and-one-half inch blade and a pistol from his home before heading to the designated meeting spot. When he arrived, the victim was already there. The victim told defendant he just wanted to talk to him — he wanted to know how defendant felt about his wife. When defendant replied that he had "feelings" for her but was not going to explain himself or apologize, the victim began calling defendant names and telling him he was immature. In fact, defendant was thirty-five years old, while he estimated that the victim was about fifty years old.

¶ 4. Both men yelled at each other angrily. The victim got in his truck but then jumped out again, coming close to defendant, who was near the door of his own truck. They continued to yell at each other. Defendant pointed his finger at the victim's face but did not touch him. The victim pushed defendant's left shoulder "enough to

toss [him] back." Defendant, who believed "nobody [had] the right to do that to [him]," drew his knife from its sheath and stabbed the victim in the back. The victim stepped back and then said, "I'm going to kill you," coming at defendant again. Defendant stabbed the victim a second time.

¶ 5. Defendant put the knife down in the truck, grabbed his cell phone, and called 911. Two people came to ask if everything was all right, and defendant told them that he had stabbed the victim in an altercation. The victim was taken to the hospital, where he was pronounced dead. The medical examiner concluded that the victim died as a result of the stab wounds, one of which pierced his aorta. Defendant gave a full confession to the police. He was charged with murder in the second degree.

¶ 6. Just as the jury entered the courtroom for the first time on the first day of trial, three people walked into the courtroom wearing green shirts bearing the statement "In Loving Memory of [Victim]." The court immediately sent the jury out again. The court and counsel then recited what had happened for the record. After ordering the three individuals not to display the shirts while in the courtroom, the court called the jurors back in.

¶ 7. The court asked the jurors if anyone had seen or observed anything that could affect his or her ability to sit fairly and impartially in the case. All the jurors responded that they had not. The State asked the jury if anything else that they had seen or heard or had contact with had "influenced [their] ability to be fair and impartial to both sides." All answered no. Defense counsel then asked the jury directly if any member had observed the gallery when they walked in to take their seats. Three jurors raised their hands.

¶ 8. At counsel's request, the court agreed to segregated voir dire of the three jurors who indicated that they had seen the gallery. The first juror questioned confirmed that she had noticed three women wearing green t-shirts with the last name of the victim on them but reported that what she had seen would not affect her ability to be fair and impartial. The second juror stated that she had noticed shirts with the last name of the victim. She believed the shirts were purple. She promised that what she had seen would not affect her ability to be a fair and impartial juror. When asked whether she had shared her observations with the other jurors, she remarked that "all [the jurors] were kind of mentioning it" and that "[o]ther people had noticed it, too, but

didn't think anything of it." She clarified that while it was mentioned, the jurors had not discussed it. The third juror questioned reported that he had not seen anything — he. had not intended to raise his hand.

¶ 9. Based on the second juror's statements, defense counsel requested individual voir dire of the other eleven panel members, which the court permitted. Six of these had noticed individuals wearing green t-shirts in the gallery. Only one juror reported reading any of the writing on the green shirts. None of the jurors indicated that their impartiality had been affected by the shirts, if they had seen them, or by any comments about the situation.

¶ 10. Defense counsel moved for a mistrial, citing the fact that many jurors who had seen the green shirts had not raised their hands initially, the possibility that they had done so intentionally, and the discrepancy between the second juror's recollection that everyone mentioned the shirts and what the subsequent jurors reported. The court denied the motion on the record. It emphasized that they had done individual voir dire of each of the jurors, and all the jurors had said that nothing they might have seen, if they had seen anything, would influence, bias, or otherwise affect their ability to serve as fair and impartial jurors. The court gave a preliminary limiting instruction to the jury, explaining that it must decide the facts based on the evidence presented at trial and that observations of matters within or outside the courtroom are not evidence.

¶ 11. During trial, defendant raised a mitigation defense of passion-provocation manslaughter. The court instructed the jury accordingly. Defendant did not object to the court's jury charge regarding adequate provocation mitigating the second-degree murder to voluntary manslaughter. The jury convicted defendant of second-degree murder, and he was sentenced to a term of twenty-two years to life. This appeal is automatic pursuant to Vermont Rule of Appellate Procedure 3(b)(2).

■ ■ ¶ 12. We first address defendant's second argument: that the court erred when it denied defendant's motion for mistrial after the jury was exposed to a potentially prejudicial extraneous influence and that the court's findings following voir dire did not eliminate the possibility that jurors were in fact influenced. Defendant relies on the discrepancy between the comment of the second juror questioned that "all [the jurors] were kind of

mentioning it" and the assurances from jurors during the individual voir dire that they had not discussed anything regarding the t-shirts. While we agree that defendant, like all criminal defendants, has a constitutional right to trial by an impartial jury, U.S. Const. amend. VI; Vt. Const. ch. I, art. 10; see also *State v. Sharrow*, 2008 VT 24, ¶ 6, 183 Vt. 306, 949 A.2d 428; *State v. Woodard*, 134 Vt. 154, 158, 353 A.2d 321, 323-24 (1976) (reiterating defendant's right to jury free and untainted by any suspicion of extraneous influences), a motion for mistrial was not technically correct in these circumstances because the jury had not yet been impaneled. Cf. *State v. Corey*, 151 Vt. 325, 330, 561 A.2d 87, 89 (1989) (stating that in trial by jury jeopardy attaches when jury is impaneled and sworn). Defendant should have filed challenges to individual jurors for cause. See V.R.Cr.P. 24(b) ("Challenges for cause of individual prospective jurors may be made at any time prior to the impanelment of the jury."). This makes no difference, however, to our decision to uphold the trial court.

¶ 13. Here, the trial court concluded that the irregularity had no effect on the jury and denied defendant's motion for mistrial. The proponent of a motion for mistrial must show that an irregularity — anything creating any suspicion of extraneous influences — was capable of influencing jury deliberations. *State v. Schwanda*, 146 Vt. 230, 232, 499 A.2d 779, 781 (1985). If an irregularity is shown, to avoid a mistrial, the opposing party must show that the irregularity in fact had no effect on the jury. *Id.* at 232, 499 A.2d at 781-82.

¶ 14. The trial court conducted both general and individual voir dire of the jury to determine whether or not the t-shirts had in fact created bias among the jurors. See *State v. FitzGerald*, 165 Vt. 343, 350, 683 A.2d 10, 15 (1996) (affirming trial court's voir dire of jury to create basis for reviewing whether in fact prejudice had been created following irregularity). Following voir dire of the three jurors who indicated that they had seen something in the gallery, the trial court conducted individual voir dire at defendant's request with both defense counsel and counsel for the State present. Overall, only three jurors had read the writing on the shirts, and each affirmed that it would have no impact on their impartiality as jurors. The four jurors who had seen the three green shirts but had not read anything on them also confirmed that they could remain impartial and unbiased.

Based upon its exchange with each juror, the trial court determined that no juror had in fact been influenced by the shirts and that each juror remained unbiased. It credited the jurors' assurances that they would remain fair and impartial. On the basis of these findings, it concluded that the jury was not in fact influenced by the shirts. See *State v. Onorato*, 142 Vt. 99, 107, 453 A.2d 393, 397 (1982) (explaining that jury's assurances of impartiality to court can be rebutted only where defendant demonstrates the actual existence of bias in the minds of the jurors). We defer to the trial court's conclusion, which shows no abuse of discretion. *State v. Desautels*, 2006 VT 84, ¶ 18, 180 Vt. 189, 908 A.2d 463 (explaining that Court defers to trial court's discretion on motion for mistrial); *State v. Messier*, 2005 VT 98, ¶ 15, 178 Vt. 412, 885 A.2d 1193 (stating that in reviewing decisions on motion for mistrial, we find error only where trial court's discretion was either totally withheld or exercised on clearly untenable or unreasonable grounds); see also *Schwanda*, 146 Vt. at 232, 499 A.2d at 781 (recognizing that motions for mistrial should not be granted absent showing of prejudice).

¶ 15. Even if defendant had filed the proper challenges to certain jurors for cause, the result is the same. In denying defendant's motion for mistrial, the trial court concluded that the State met its burden: demonstrating that the t-shirts did not in fact influence the jury, who did not demonstrate bias. Therefore, defendant's right to an impartial jury, no matter what procedural avenue he chose to address the demonstration, was properly protected by the trial court. The substantive findings underlying the trial court's denial of the mistrial apply with equal force to any consideration of a challenge for individual bias. We note, however, that challenges for cause would have placed the burden on defendant to show juror bias, in contrast to the motion for mistrial, which merely required defendant to show that the t-shirts were capable of influencing jury deliberations.

■ ■ ¶ 16. Had he challenged the jurors for cause, defendant could not have carried his burden of showing that they demonstrated fixed bias.* *Sharrow*, 2008 VT 24, ¶ 7 (stating that courts

---

* Courts must also sustain a challenge for cause where the law infers that a prospective juror is biased. *Sharrow*, 2008 VT 24, ¶ 7. Defendant here was concerned about potential bias stemming from jurors viewing the t-shirts. Thus, inferred bias — bias implied when a prospective juror has such a close relationship

must sustain party's challenge for cause where prospective juror demonstrates fixed bias). A potential juror has a fixed bias when, through his or her answers to questions posed on voir dire, the prospective juror demonstrates a state of mind inconsistent with deciding the case fairly. *Id.* ¶ 8. Where a prospective juror has stated that he or she can judge the case fairly, or has at least failed to say that he or she could not, we have been reluctant to conclude that the potential juror had a fixed bias as a matter of law. *Id.* ¶ 9.

¶ 17. The trial court's determination that the jurors were not in fact influenced by the shirts and remained impartial certainly satisfies our standard for denying a fixed bias challenge for cause: the court effectively concluded that the potential jurors did not demonstrate a state of mind inconsistent with deciding the case fairly. It made this decision based on its individual voir dire of the prospective jurors, none of whom stated that he or she would be unable to remain impartial. The trial court is in a unique position to evaluate juror bias, and we defer to its conclusions. *Id.* ¶ 11. We have said that "there are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury." *Id.* (quotation omitted). On the basis of the record, we have no reason to disturb the trial court's ruling in this case, which was well within its discretion.

¶ 18. Defendant also argues that the trial court's failure to instruct the jury to consider defendant's individual character- istics in connection with its "adequate provocation" charge for the mitigating defense of passion-provocation manslaughter was plain error. Four factors guide our plain error analysis: (1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *State v. Rounds*, 2011 VT 39, ¶ 31, 189 Vt. 447, 22 A.3d 477. When reviewing possible error in a jury instruction, we examine the instructions in light of the record evidence as a whole and determine if any error would result in a miscarriage of justice. *State v. Lambert*, 2003 VT 28, ¶ 14, 175 Vt. 275, 830 A.2d 9.

with a participant in the trial that the potential juror is presumed unable to be impartial as a matter of law — is not at issue. See *id.* ¶ 14.

Moreover, we review the instructions in their entirety. If the charge as a whole is not misleading, there is no plain error. *State v. Streich*, 163 Vt. 331, 352-53, 658 A.2d 38, 53 (1995). This is a very high bar — we find plain error only in rare and extraordinary cases. *State v. Erwin*, 2011 VT 41, ¶ 14, 189 Vt. 502, 26 A.3d 1. We conclude that the trial court committed no such error here.

 ¶ 19. The court instructed the jury:

> You may find that the degree of the crime is reduced from second degree murder to voluntary manslaughter if [defendant's] mental state was influenced by sudden passion or adequate provocation that would cause a reasonable person to lose self-control. . . . "Adequate provocation" refers to the degree of provocation that would cause a reasonable person to lose self-control and to act without thinking. . . . Any person who is assaulted with violence or with an act of extreme insult may be provoked to a sudden impulsive anger which cannot be resisted until the person cools down. . . . If this person attacks his or her assailant and causes death, the killing may be found to be the result of anger . . . . If [defendant] was adequately provoked but did not have enough time to cool down, and in fact did not cool down, then [defendant's] inability to cool down within that time was reasonable under the circumstances. If there was provocation . . . but enough time passed between the provocation and the actions allegedly taken by [defendant] to allow a reasonable person to cool down, then the acts cannot be said to have resulted from . . . adequate provocation.

Contrary to defendant's claim, "basic fairness" does not require us to conclude that the trial court committed plain error by not specifically instructing the jury to assess the reasonableness of defendant's provocation with regard to his individual characteristics. Nor do the other cases cited by defendant support a conclusion that the trial court committed plain error with its adequate provocation instruction. Indeed, the trial court's instructions were in keeping with the standard we set forth in *State v. Williams*, 2010 VT 83, ¶ 10, 188 Vt. 413, 8 A.3d 1053, for mitigating second-degree murder to voluntary manslaughter based on adequate provocation. In *Williams*, we explained that "the test

is not only whether an individual defendant was sufficiently provoked into violent action, but whether a reasonable person in his or her position would have been so provoked." 2010 VT 83, ¶ 10. To establish provocation, the facts must show: "(1) adequate provocation; (2) inadequate time to regain self-control or 'cool off'; (3) actual provocation; and (4) actual failure to 'cool off.'" *Id.* (quotation omitted). The trial court here clearly charged the jury to consider these factors in the context of all the evidence presented at trial. It stated that "'adequate provocation' refers to the degree of provocation that would cause a reasonable person to lose self-control and act without thinking." The court went on to explain: "Any person who is assaulted with violence or with an act of extreme insult may be provoked to a sudden impulsive anger which cannot be resisted until the person cools down. . . . If this person attacks his or her assaulter and causes death, the killing may be found to be the result of anger . . . . If [defendant] was adequately provoked but did not have enough time to cool down, and in fact did not cool down, then [defendant's] inability to cool down within that time was reasonable under the circumstances." These instructions, which track our case law on adequate provocation, are not plain error.

*Affirmed.*