NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 62

No. 23-AP-213

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Kerri Nicholas | May Term, 2024 |

Katherine A. Hayes, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin Delaney & Ricci Law Group, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Mello, Supr. J. (Ret.),
Specially Assigned

¶ 1. **COHEN, J.** Defendant appeals his conviction for cruelty to a child following a jury trial. On appeal, defendant argues that it was plain error for the court to allow admission of defendant's prior conviction for cruelty to a child involving a different victim. We conclude that admission of defendant's prior conviction to demonstrate defendant's intent did not result in plain error and affirm.

¶ 2. The following facts were presented at trial. The charge against defendant concerned one-year-old O.S., who lived with his mother—defendant's girlfriend at the time—and defendant in defendant's house in 2019. When O.S. and his mother moved into defendant's home,

O.S. was current in his healthcare appointments and his pediatrician had no concerns regarding O.S.'s health or safety. After O.S.'s mother obtained employment, defendant provided daily care for O.S. During this time, O.S.'s mother observed that defendant was stern with O.S. and O.S. often sought defendant's approval before acting. In October 2019, O.S. started exhibiting symptoms of a stomach bug. On Saturday, October 12, 2019, O.S. visited his father who noticed that O.S. was unusually sleepy and fussy, and seemed uncomfortable. When mother retrieved O.S., she observed that O.S. was still tired and throwing up. On Wednesday, mother brought O.S. to the doctor because he was still vomiting. The diagnosis at the time was a possible stomach bug. When things did not improve by Saturday, O.S.'s doctor advised going to the hospital.

¶ 3. Evaluations of O.S. could not determine the cause of his symptoms, and eventually, O.S. was examined at Dartmouth-Hitchcock Medical Center (DHMC) where he underwent additional testing. The treatment team was unable to find any infection causing O.S.'s symptoms and his case was given to the Child Advocacy and Protection Program (CAPP), which provides specialized medical services for victims of child abuse and neglect. Mother notified the CAPP team that there were four episodes in which O.S. woke up from his night's sleep with a bruised ear. A doctor explained that ear bruising is an "abuse-specific finding," and the injury could not be caused by a toddler putting an ear against a wooden slat of a crib.

¶ 4. O.S. underwent a child physical-abuse workup, including a skeletal survey that included multiple views of O.S.'s entire skeleton to allow doctors to determine injuries to his bones. The results indicated that O.S. did not have any disorders that could account for his injuries. The survey showed six fractures. There were three rib fractures on the left side of the lateral aspect of the rib cage. These injuries showed some indication of healing. There was also a healing fracture on the left side of a bone in the shoulder blade. Both the left and right humerus bones in the upper arms had fractures in the growth plate. A doctor explained that the lateral rib fractures

2

were consistent with an adult squeezing the rib cage from front to back. The doctor stated that the injuries to the humerus bones were caused by vigorous or violent pulling, shaking, or twisting of the upper arm. The injuries required a violent force over a short period of time. For the injury to the shoulder blade, the doctor explained that the mechanism of injury would be a direct impact pulling the arm. The doctor could not confirm whether the injuries all occurred at the same time. She stated that the injuries would have caused O.S. immediate pain and further pain when touched, pressured, or manipulated. The doctor also explained O.S.'s ear bruising indicated an impact to the side of the head.

¶ 5.    After learning of O.S.'s injuries mother remembered prior incidents between defendant and O.S. Mother recalled that shortly before O.S. became sick, she returned from work and noticed O.S. had a bruised ear. Defendant told mother O.S. woke up from his nap with the injury and speculated that the injury must have occurred from O.S. banging his head against the side of the bed. Mother also recounted that she had heard O.S. crying after defendant put him down for a nap and had found O.S. swaddled tightly with the blanket over his face. She removed the blanket and unwrapped him. She also observed defendant putting O.S. down "rather roughly." A week before O.S. went to DHMC, mother recalled defendant gave O.S. a shower and afterwards defendant made a derogatory statement about O.S. to mother. O.S. was crying and it appeared defendant felt bad about something. At the time the incidents occurred, mother did not consider them suspicious, but she viewed them differently following the results of the skeletal survey.

¶ 6.    After O.S. was released from the hospital, mother engaged in a conversation with defendant on social media, asking defendant to be honest about what defendant did to O.S. In the conversation, defendant indicated that O.S. might have been injured in the shower when O.S. threw himself back and defendant had to grab him. He stated that he did not think he grabbed harder than he should have.

3

¶ 7.    In January 2020, the State charged defendant with willfully ill-treating or neglecting a child in a manner to cause unnecessary suffering in violation of 13 V.S.A. § 1304(b)(1).  Prior to trial, in July 2021, the State gave notice pursuant to Vermont Rule of Evidence 404 that it intended to introduce evidence of two prior bad acts by defendant.  The first incident involved allegations from 2009 that defendant inflicted bilateral head fractures and a bite mark on a six-month-old child in New Hampshire.  The treating physicians concluded that the injuries were consistent with child abuse or nonaccidental trauma.  The second incident involved allegations that defendant caused a bruised face, bruised belly, bruised buttocks, and black eyes to a four-year-old child in Vermont in 2012.  At the time, defendant was in a relationship with the child's mother.  Defendant was charged for the 2012 conduct, and following a jury trial, defendant was convicted of one count of domestic assault and cruelty to a child for some of the injuries the child received.  The State asserted that the two incidents were relevant and admissible to demonstrate that defendant acted willfully and not by mistake or accident.  Defendant objected to admission of the 2009 uncharged conduct, asserting that the State could not introduce any acts for which there was no conviction to demonstrate intent.  Defendant's opposition did not address the 2012 conduct that resulted in a criminal conviction.

¶ 8.    Following a hearing, the court issued a written order.  The court concluded that the prior-bad-act evidence was relevant and admissible for proving motive or intent rather than showing defendant's propensity for abuse under Rule 404(b).  The court then assessed whether the probative value was substantially outweighed by unfair prejudice under Vermont Rule of Evidence 403.  As to the 2009 allegation, the court concluded that these acts were not admissible under a Rule 403 balancing.  The court explained that evidence of those acts would require a trial within a trial because there was no conviction or admission that defendant was responsible for the child's injuries.  The court determined that this unfair prejudice outweighed the relevance of the evidence.

4

As to the 2012 conviction, the court found that the prejudicial effect did not substantially outweigh the probative value of the evidence given that there was a conviction and therefore less time would be required to introduce the evidence and that admission of just one prior bad act would reduce the likelihood that the jury would improperly use it as propensity evidence. The court noted that it would instruct the jury at the time of admission on the limited purpose of the evidence.

¶ 9. The case proceeded to trial, which took place over four days. At trial, mother testified that she did not engage in any act, accidental or otherwise, against her son that could cause his injuries. She also testified concerning the conversation that she had with defendant over social media in which she asked defendant if he grabbed O.S. harder than he should have and defendant answered he could have. Other adults in O.S.'s life also testified that they had not harmed O.S. intentionally or unintentionally. The State introduced testimony from medical experts regarding O.S.'s injuries and the causes.

¶ 10. The State also introduced evidence of defendant's prior conviction for cruelty to a child consistent with the trial court's pretrial order. A former Brattleboro police officer testified that he was involved in investigating defendant in 2012 for harm caused to the child of defendant's then girlfriend. The child in question was four years old and sustained a black eye. At the time, defendant claimed that the injury resulted from the child bumping her eye on the bathroom doorknob. The officer testified that defendant was charged with and ultimately convicted of cruelty to a child. Defendant did not object to admission of the officer's testimony. Immediately following the testimony, the court instructed the jury that it could not consider the evidence to prove that defendant acted in the same way towards O.S. The court stated that the evidence was to be used only in assessing defendant's "state of mind or intention in his conduct towards [O.S.], that's all. Just as to state of mind or intention. That is, whether he was acting willfully." Defendant did not testify or present any evidence.

5

¶ 11.    Prior to its deliberations, the court instructed the jury on the permissible use of defendant's prior conviction.  The court explained that the jury could not consider the prior conviction "as tending to prove that [defendant] was acting in the same way, or doing the same thing that he did previously in his conduct toward [O.S.]."  The court instructed the jury that the evidence was only relevant to "assessing what [defendant's] state of mind or intention was in his conduct toward [O.S.].  That is, whether he acted willfully, and whether his conduct was intended to cause unnecessary suffering, and to disprove any claim that [O.S.'s] injuries were caused by accident or mistake."  Defendant made no objection to this instruction.  The court also outlined the essential elements of the charge that the State was required to prove, including that defendant acted willfully and that his actions caused O.S. unnecessary suffering or endangered O.S.'s health.  The jury found defendant guilty of cruelty to a child, serious injury resulting.

¶ 12.    On appeal, defendant argues that the court erred in allowing the State to introduce evidence of defendant's prior conviction.  Evidence of other crimes is admissible under Rule 404(b) for limited purposes.  Prior crimes may not be admitted to show a person's character trait or to prove a person has a propensity to act in a particular manner.  This evidence may, however, be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  V.R.E. 404(b).  Even if admissible under Rule 404(b), prior convictions may still be excluded under Rule 403 if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 13.    The burden is on the State "to show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the probative value of the evidence is not substantially outweighed by its prejudicial effect."  State v. Lipka, 174 Vt. 377, 391, 817 A.2d 27, 38-39 (2002) (quotation

6

omitted). The trial court has deference to admit evidence for these purposes and this Court reviews for an abuse of discretion. State v. Menize, 2023 VT 48, ¶ 22, __ Vt. __, 308 A.3d 507. Where, as here, the error is not preserved below, this Court reviews for plain error, which "exists only in extraordinary situations where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Lucas, 2015 VT 92, ¶ 9, 200 Vt. 239, 129 A.3d 646 (alteration and quotation omitted).

¶ 14.    The admission of defendant's prior conviction did not amount to plain error in this case. The evidence was relevant and was used for a legitimate purpose. The State offered the evidence to demonstrate motive or intent in conformance with Rule 404(b).[1] The charge of cruelty to a child required the State to prove that defendant injured O.S. "willfully," 13 V.S.A. § 1304(a), meaning "intentionally and by design." State v. Amsden, 2013 VT 51, ¶ 34, 194 Vt. 128, 75 A.3d 612 (alteration and quotation omitted). Defendant's prior conviction of cruelty to a child was relevant to this element.[2]

¶ 15.    Defendant asserts that evidence of intent was not relevant where defendant did not assert mistake or accidental injury as a defense at trial. Because willfulness was an element of the offense, the State had an affirmative obligation to prove defendant acted with the requisite intent. Moreover, although defendant did not testify and personally assert that the injuries may have been caused accidentally, during the investigation he offered innocent explanations for O.S.'s injuries and indicated the injuries may have been inflicted accidentally. For example, O.S.'s mother testified that when she confronted defendant about O.S.'s injuries and defendant's behavior

---

[1]  The State proffered that the evidence was relevant to "demonstrating proof of intent, knowledge, and/or absence of mistake or accident."

[2]  On appeal, the State also argues that the prior conviction was relevant to proving an additional element—that defendant's actions caused O.S. "unnecessary suffering" or endangered O.S.'s health. 13 V.S.A. § 1304(a). We need not reach this question.

towards O.S., defendant asserted that he did not intend to injure O.S. Evidence regarding defendant's intent was therefore relevant and defendant's prior conviction of cruelty to a child was admissible under Rule 404(b) to demonstrate that defendant acted willfully as required by the statute.

¶ 16. There is no merit to defendant's assertion that the prior conviction lacked relevance and was therefore inadmissible under Rule 404(b) because the prior conviction involved acts against a different child. In making this argument defendant relies on domestic-assault cases involving prior bad acts toward the same victim. For example, in State v. Hendricks, evidence of the defendant's prior physical violence towards the victim was admitted for the particular purpose of providing context for the defendant's relationship to the victim. 173 Vt. 132, 139, 787 A.2d 1270, 1276 (2001) (explaining that prior domestic assault may be admitted in domestic-violence case because allegations, "taken out of its situational context, are likely to seem incongruous and incredible to a jury" (quotation omitted)). The purpose for admitting the prior conviction here is different than in Hendricks and other domestic-assault cases where context is required to understand the dynamics of the relationship between the defendant and the victim. In this case, defendant's prior conviction was admitted for the specific purpose of demonstrating intent or lack of mistake—a required element of the charge—and not to give context regarding the relationship between defendant and O.S. Rule 404(b) is not limited to admitting prior convictions or bad acts of a defendant against the same victim. See State v. Cardinal, 155 Vt. 411, 415, 584 A.2d 1152, 1155 (1990) (affirming trial court's admission of defendant's threatening behavior towards victim's partner to demonstrate defendant's state of mind as jealous lover). The conviction here was relevant to proving intent and therefore admissible under Rule 404(b).

¶ 17. Defendant also argues that admitting the prior conviction was overly prejudicial and therefore amounted to plain error. Prior bad acts, even if relevant, may be excluded if the

8

probative value is substantially outweighed by unfair prejudicial effect. V.R.E. 403. In assessing whether there is unfair prejudice, the trial court has "substantial discretion," and may consider different factors including the need for the prior conviction in light of the other evidence, the degree of probative value, and "the extent to which the jury is likely to be aroused to hostility by the evidence." State v. Hinchliffe, 2009 VT 111, ¶ 28, 186 Vt. 487, 987 A.2d 988 (quotation omitted). Here, as set forth above, the prior conviction was relevant to proving willfulness, which was an element of the offense. The trial court determined that admission of the prior conviction was not so inflammatory as to outweigh this relevance, especially because this was a prior conviction and not uncharged misconduct, so it did not require extensive testimony or necessitate a mini-trial. See State v. Burke, 2012 VT 50, ¶ 21, 192 Vt. 99, 54 A.3d 500 (affirming exclusion of evidence where "mini-trial would have been required to determine whether the third party did assault complainant's friend, and the evidence would have likely distracted the jury and confused the issues").

¶ 18. The court's weighing of the Rule 403 factors and decision to admit the evidence did not rise to the level of plain error. Plain error is guided by four factors: "(1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. Plain error is a "very high bar" that is present "only in rare and extraordinary cases." Id. Here, we need not address all the plain-error factors because defendant has not demonstrated that admission of the evidence resulted in prejudice or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. The prior conviction was a small part of the evidence presented at trial. This was a four-day trial involving eleven witnesses. The prior conviction was introduced during one witness's testimony and took minimal time.

Moreover, the court diminished any prejudicial impact of the evidence by providing instructions to the jury both immediately after the testimony and prior to deliberations. See State v. Longley, 2007 VT 101, ¶ 22, 182 Vt. 452, 939 A.2d 1028 (affirming admission of prior citation where limiting instruction made immediately after testimony). Given this context, admitting evidence of defendant's prior conviction did not amount to plain error.

Affirmed.

FOR THE COURT:

_____

Associate Justice