### State of Vermont v. David P. McKeen

[685 A.2d 1090]

No. 94-260

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 30, 1996

Motion for Reargument Denied September 25, 1996

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, *Henry Hinton*, Appellate Attorney, Montpelier, and *David P. McKeen*, pro se, Swanton, for Defendant-Appellant.

**Dooley, J.** Defendant David McKeen appeals his convictions for sexual assault, 13 V.S.A. § 3252, and kidnapping, 13 V.S.A. § 2405, following a jury trial. He argues that a new trial should have been ordered because of the misconduct of a juror. We conclude that the decision to deny a new trial was within the discretion of the trial court and affirm.

On the night of July 11, 1992, defendant met the complainant at Eddy's Pub in Burlington. The two left the pub together and entered defendant's automobile. The complainant testified that defendant then hit her on the head and drove her to his home in Starksboro, where he tied her and forced her to engage in multiple sexual acts. Afterwards, he drove her, naked and bound, to an isolated dirt road and pushed her out, along with her clothes.

Defendant testified during trial and provided a different version of the events. He testified that he had agreed, prior to the trip to his home, to purchase an "eight ball" of cocaine for the complainant in exchange for sex. He claimed the sexual contact had been consensual and that when he refused to buy the cocaine as promised, the complainant became violent, requiring him to restrain her with ropes.

Defendant's jury trial began on October 26, 1993. Throughout the proceedings, the trial court cautioned the jurors not to discuss the case with anyone and not to read newspaper accounts or watch television newscasts about the trial. At the end of the trial, before dismissing the alternates, the court asked the jurors whether any of them had discussed the case with third parties or had received any outside information about the trial. No juror answered affirmatively. On November 2, 1993, after a day of deliberations, the jury returned its verdict, finding defendant guilty of sexual assault and kidnapping.

The next day an anonymous caller reported to defendant's attorney that a juror, later identified as Jeffrey Prior, had discussed the case with a friend at the Daily Planet, a Burlington restaurant. After the defense filed a motion for a new trial on grounds of juror misconduct, the trial court held a hearing on November 5 and December 1, 1993 to investigate the possible juror taint.

During the hearing, the friend testified that on Friday evening, October 29, 1993, he saw Prior at the restaurant and struck up a conversation, out of the hearing of others. When it was disclosed that Prior was serving as a juror in defendant's trial, the friend exclaimed, "Guilty, guilty, guilty." Prior replied that defendant was not necessarily guilty. He said he was impressed with defendant's testimony as well as with his defense lawyer, was not convinced of defendant's guilt, and was uncertain how he would vote.

Prior then discussed some of the testimony he had heard that day. Specifically, he said he heard that defendant, a construction worker, had gone out on the town to a bar he had never visited before with a lot of money; that defendant testified he was repelled by the smell of the complainant when she was undressed at his Starksboro home; and that defendant and complainant were driving around, looking to buy drugs.

Lastly, Prior and his friend talked about the reasonable-doubt standard. The friend said that the standard is met only when a jury is convinced without a reasonable doubt that the defendant is completely guilty. During the conversation, the friend also related information about Eddy's Pub — he lived in the neighborhood; the pub was a site of drug dealing; two female prostitutes who used to live on his street used the pub to pick up customers and take them to a nearby apartment.

On the second day of the hearing, Prior assured the trial court he had not brought any of the conversation with his friend into the jury room. The jury foreperson also testified and supported Prior's claim, but revealed in addition that Prior had mentioned to other jurors the price of an eight ball of cocaine, which he had learned from someone. Recalled to the stand, Prior admitted he had had a second conversation with a person named Nelson, probably at the same bar, and learned from it that the current market price of an eight ball of cocaine was $300. He told other jurors this price. Prior denied having any other conversations and again denied that he imparted any other information to the other jurors.

At the end of the hearing, the trial court determined that Prior's misconduct had not influenced the jury deliberations or tainted the verdict. The court applied a two-part analysis: (1) whether defendant showed an irregularity capable of influencing the jurors; and (2) if so, whether the State showed that the irregularity did not in fact prejudice the jurors against defendant. See *State v. Corey*, 151 Vt. 325, 328, 561 A.2d 87, 88 (1989); see also *State v. Woodard*, 134 Vt. 154, 157, 353 A.2d 321, 323 (1976) ("In the absence of proof to the effect that the jury was not influenced by the circumstances here, the danger remained that the capacity to do so did exist."). The court found that defendant failed to make the threshold showing that the conversation with Prior's friend had the capacity to influence the jury, but did make such a showing as to Prior. It concluded, however, that Prior was not actually influenced by the conversation. As to the information about the price of an eight ball of cocaine, the court found

that it was not capable of influencing Prior or the eleven other jurors. This appeal followed the denial of defendant's motion for a new trial.

■ The issue on appeal is whether the trial court properly held that neither incident of juror misconduct by Prior amounted to prejudicial extraneous contact sufficient to invalidate the jury verdict. The decision on a motion for a new trial under V.R.Cr.P. 33 is normally entrusted to the discretion of the trial court. *State v. Jewell*, 150 Vt. 281, 284, 552 A.2d 790, 792 (1988). Absent a showing of abuse or withholding of discretion, the trial court's decision will be upheld. *State v. Briggs*, 152 Vt. 531, 542, 568 A.2d 779, 785 (1989). "Determining whether a verdict was affected is a fact-driven exercise that will depend upon the circumstances of the case." *United States v. Sanders*, 962 F.2d 660, 668 (7th Cir.), *cert. denied*, 506 U.S. 892 (1992). Because the trial judge develops a relationship with the jury during the course of trial, he or she is in the best position to make that determination. See *Virgin Islands v. Dowling*, 814 F.2d 134, 137 (3d Cir. 1987), *aff'd*, 493 U.S. 342 (1990). Consequently, every reasonable presumption in its favor is accorded to the ruling below. See *State v. Dragon*, 135 Vt. 168, 170, 376 A.2d 12, 13 (1977). Under these principles, we do not find a new trial was warranted.

At the outset, we agree with the two-part inquiry adopted by the trial court. A defendant is entitled to a fair trial free of the suspicious taint of extraneous influences. See *State v. Wool*, 162 Vt. 342, 353, 648 A.2d 655, 662 (1994). A defendant alleging either extraneous influences or juror misconduct must first demonstrate that an irregularity occurred and it had the capacity to affect the jury's result. See *State v. Griffin*, 152 Vt. 41, 45, 563 A.2d 642, 645 (1989) (defendant claiming taint of extraneous influences required only to show capacity to affect result); *Isabelle v. Proctor Hospital*, 131 Vt. 1, 3, 298 A.2d 818, 819 (1972) (one claiming juror misconduct not required to prove actual prejudice, only circumstances having that potential).

■ The trial court disposed of two claims of misconduct by concluding that defendant failed to meet this standard. It held that the information conveyed in the conversation between Prior and his friend had no capacity to influence the jurors, other than Prior, and that the information about the price of an eight ball of cocaine had no capacity to influence any juror, including Prior. We agree with both determinations.

Based on the testimony of Prior and the jury foreman, the trial court found that no part of the conversation between Prior and his

friend was conveyed to the rest of the jurors. Since the jurors were unaware of the conversation, or its contents, they could not be influenced by it. See *State v. Martel*, 164 Vt. 501, 507, 670 A.2d 845, 850 (1995).

Defendant urges us to overturn the trial court's determination on this issue because Prior was an unbelievable witness in light of his failure to disclose that he talked about the price of cocaine and his hope, expressed in a letter to the trial judge, that his actions would not cause a mistrial. Defendant also attacks the objectivity of the trial judge who, he asserts, wanted to protect the verdict at all costs. Despite these considerations, we leave credibility determinations to the trial court and affirm its findings, if there is evidence to support them.

The trial court also found that the price of an eight ball of cocaine had no capacity to bias the jury.* In examining this finding, we note that the crucial factor in deciding when jury exposure to extraneous information requires a new trial is "'the degree and pervasiveness of the prejudicial influence possibly resulting'" from that exposure. *United States v. Weisman*, 736 F.2d 421, 424 (7th Cir. 1984) (quoting *United States v. Solomon*, 422 F.2d 1110, 1118 (7th Cir. 1970)). We find the degree and prejudice possibly resulting from Prior's information to be minimal.

Defendant contends that the price is relevant to whether a jury might believe someone would pay as much as $300 for drugs in exchange for sex, as proposed by the defense theory of the case. Defendant testified at trial, however, that (1) he did not know the price of an eight ball, and (2) he was willing to buy it for the victim, apparently regardless of price. He also testified that he reneged on this promise. If defendant did not know the price of an eight ball of cocaine, it makes little difference what that price was. When considered in the context of the entire trial, the price of an eight ball constitutes only a minor detail, not at issue, with negligible relevance to defendant's guilt or innocence.

In *Corey*, by way of contrast, a deliberating jury asked the court officer to pace off ninety-two feet, which was the distance from which

---

* The trial court noted that the information conveyed by Prior to the other jurors had already been admitted into evidence during trial. Defendant attacks this reasoning because the only reference to the price of cocaine was in a question by the prosecutor to defendant. Defendant answered that he did not know the price of an eight ball of cocaine. Thus, defendant argues that there was no testimonial evidence of the price.

We agree that a prosecutor's question is not itself evidence. As we suggest in the text, however, defendant's answer made the price information largely irrelevant.

the defendant allegedly shot the victim. In affirming the mistrial order, we determined that because the sheriff's conduct bore directly on the defense's theory of self-defense, it had the capacity to prejudice the defendant's rights. 151 Vt. at 328, 561 A.2d at 89. No evidence was offered to overcome the presumption of prejudice and show the officer's actions had no effect on the outcome of the case.

The trial court, in the exercise of its broad discretion, could evaluate the possible prejudice from the extraneous information about the cocaine price in light of all the evidence, the demeanor of the witnesses and the issues presented before coming to a common-sense conclusion on the impact of the information. See *State v. Christianson*, 337 N.W.2d 502, 506 (Iowa 1983). Unlike the situation in *Corey*, the possibility of improper influence was remote. We believe the court acted within its discretion in concluding that the cocaine price information did not have the capacity to affect the jury's result.

Although the above analysis answers the claims that a new trial was warranted because of the effect of Prior's conversation with his friend on the rest of the jury or the effect of the cocaine price information, we still must consider the impact of the barroom conversation on Prior. The trial court recognized that the conversation had the capacity to influence Prior but held that the State discharged its burden to show he was not, in fact, influenced. We agree with this analysis.

The burden placed on the opposing party to rebut presumptive prejudice is a heavy one. *Remmer v. United States*, 347 U.S. 227, 229 (1954). A trial court should base its evaluation of juror prejudice upon a consideration of the totality of the circumstances, see *Sher v. Stoughton*, 516 F. Supp. 534, 545 (N.D.N.Y.), *judgment rev'd on other grounds*, 666 F.2d 791 (2d Cir. 1981), and consider the content of any improper communication and the context in which it was given. See *Boykin v. Leapley*, 28 F.3d 788, 791 (8th Cir. 1994). Among the factors to be considered are whether an improper communication was directly related to a material issue in the case; whether it was inflammatory in nature; whether there was any attempt to exert influence upon the juror; how the juror reacted to the improper communication; whether the juror testified that he or she was influenced by the communication; whether other jurors were aware of the improper communication; and whether the evidence to support the verdict was strong. See, e.g., *Dickson v. Sullivan*, 849 F.2d 403, 407 (9th Cir. 1988) (comment of deputy sheriff who escorted jurors that defendant had "done something like this before" both directly

related to material issue and highly inflammatory); *Towler v. State*, 372 S.E.2d 242, 243-44 (Ga. Ct. App. 1988) (mother's remark to daughter-juror that daughter was "holding out" against guilty verdict and "was going to let a child-molester go free," although not clear attempt to influence juror, was sufficient to invalidate verdict); *State v. McLemore*, 640 So. 2d 847, 859 (La. Ct. App. 1994) (where juror did not react to statement by third person about guilt of defendant and refused to discuss merits of case, verdict not overturned based on juror's testimony that extrajudicial contact did not affect his impartiality and that of other jurors); *United States v. Williams-Davis*, 821 F. Supp. 727, 738 (D.D.C. 1993), *aff'd in part, vacated in part on other grounds*, 90 F.3d 490 (D.C. Cir. 1996) (government established harmlessness of media coverage based upon noninflammatory content of coverage and overwhelming weight of evidence against defendant).

Applying these principles, we believe four main factors support the trial court's determination. First, the factual information conveyed in the conversation was entirely consistent with the evidence and, if anything, was helpful to defendant. It established that the neighborhood where defendant met complainant in a bar was seedy, which was entirely consistent with defendant's claim that there was an agreement to trade sex for drugs. See *Allen v. State*, 597 A.2d 489, 501 (Md. Ct. Spec. App. 1991) (where extraneous information is consistent with defendant's theory of case, there is no prejudice).

Second, Prior expressed no opinion on the guilt of defendant. See *Isabelle v. Proctor Hospital*, 129 Vt. 500, 505, 282 A.2d 837, 840 (1971) (expression of opinion by juror on merits of case or its probable outcome disqualifies juror); *Norcross v. Willard*, 82 Vt. 185, 187, 72 A. 820, 821 (1909) (same; new trial ordered). Instead, he clearly stated his obligation to hear all the evidence before forming an opinion. See *State v. Thomas*, 636 P.2d 807, 811-12 (Kan. Ct. App. 1981) (juror's conversation with other bar customers about case, during which juror stated her thoughts about some trial evidence but added that she had not reached opinion about guilt or innocence of defendant, was by itself probably not prejudicial); *State v. Tenney*, 913 P.2d 750, 757-58 (Utah Ct. App. 1996) (in discussing case with outsider, juror stated he would have to hear all evidence before deciding defendant's guilt; awareness of this responsibility is factor in determining misconduct had no effect on deliberations).

Third, Prior testified that the conversation had no effect on his deliberations, and the trial court accepted this testimony. See *Smith*

*v. Phillips*, 455 U.S. 209, 217 n.7 (1982) (juror is qualified to say whether he has unbiased state of mind).

Finally, the expression of an opinion by Prior's friend was an isolated instance. In fact, the friend appeared to convey support for open-minded deliberation and application of the standard of proof for criminal cases.

*Affirmed.*