*Williams v. State of Vermont*, No. 390-8-10 Frcv (Harris, J., July 28, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

SUPERIOR COURT
Franklin Unit

CIVIL DIVISION
Docket No. 390-8-10 Frcv

---

## Williams vs. State of VT

## ENTRY REGARDING MOTION

Count 1, Post Conviction Relief (390-8-10 Frcv)

Title:         Motion in Limine (Motion 8)
Filer:         Co-counsel
Attorney:    Zachary Jian Chen
Filed Date:  April 7, 2017

Response filed on 06/30/2017 by Attorney Seth E. Lipschutz for Plaintiff Alphonso Williams
        Petitioners response to States Motion in Limine w/attachments fi;
Response filed on 07/14/2017 by Attorney Zachary Jian Chen for party 2 Co-counsel
        States Reply regarding Motion in Limine: Jennifer Mims fi; Certificate of service fi;

This is a post conviction relief ("PCR") case involving claims of ineffective assistance of counsel ("IAC"). Pending before the court is the State's motion *in limine* to bar use at trial of the testimony of a juror, Jennifer Mims ("Ms. Mims"), relating to events that occurred during the Plaintiff's criminal trial.

Plaintiff, Alphonso Williams ("Mr. Williams" or "Plaintiff") is represented by Attorney Seth Lipschutz and the State of Vermont by Attorney John Treadwell and Attorney Zachary Chen. The parties' filings describe uncontested facts before the court on the motion. (It is uncontested what Ms. Mimms said in her affidavit and at deposition after conclusion of Mr. Williams' criminal trial. Whether those or similar testimony are admissible in this IAC matter is the centerpiece of the pending motion).

The pertinent  are summarized below.

1. In 2008 Mr. William faced several criminal charges in Franklin County – namely first degree aggravated domestic assault, second degree unlawful restraint, vehicle operation without the owner's consent, sexual assault and escape. (*State v. Alphonso Williams*, Docket 114-11-08 Frcv).

2. Mr. Williams was represented by Attorney Danial Maguire.  On 1/6/09 the jury draw occurred in the case and a jury was empaneled, that included Ms. Mims.  During the juror

questioning limited questioning of the potential jurors' past experiences with sexual abuse was elicited.

3. During the voire dire Attorney Maguire asked the panel if anyone would have difficulty remaining fair and impartial where the issue was alleged improper sexual conduct and alleged domestic abuse was part of the evidence. One panel member responded and volunteered that she had been the victim of sexual abuse as a child, and was then excused by the judge.

4. Ms. Mims did not respond to the general inquiry to the group. She had experienced prior sexual abuse.

5. No more particularized questioning of the juror panel, or offers to respond to questions about sexual or domestic abuse history in private (in chambers before the judge and counsel, outside the presence of other potential jurors), was discussed.

6. The panel was selected, including Ms. Mims.

7. The trial occurred. Mr. Williams was on 1/22/09 convicted on all of the charges except the escape charge. The conviction was affirmed by the Vermont Supreme Court in *State v. Williams*, 2010 WL 712201 (2/25/10).

8. Following an investigation that started in 2013, Ms. Mims gave a 7/24/13 affidavit, and later a 3/27/17 deposition.

9. In her affidavit Ms. Mims stated that:
   a. She was shocked potential jurors had not been questioned if they had been the victim of abuse during voire dire.
   b. That if she had been asked that she would have revealed that her ex-husband had abused her and been convicted of domestic abuse in 2007.
   c. That if she had been asked if she could be fair or impartial in a domestic and sexual abuse case, she would have said "no".
   d. She does not think Mr. Williams is guilty and her prior abuse was on her mind when she deliberated and not something she could set aside in the deliberations.

10. Ms. Mims deposition testimony was to similar effect. (See transcript at page 9, lines 15-23; page 15, line 19 to page 16, line3; Page 22, lines 1 to 21; page 31, lines 9 -21; page 31, line 22 to Page 32, line 5).

Legal Analysis

The State argues Ms. Mims' testimony is inadmissible in the IAC claim trial in this matter, as it is barred under Vermont Rule of Evidence 606(b). This rule provides in pertinent part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the

effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received; *but a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention,* whether any outside influence was improperly brought to bear upon any juror, or whether any juror discussed matters pertaining to the trial with persons other than his fellow jurors.

V. R. Evid. 606(b)(italics added).

Rule 606(b), like the similar federal rule on which it is based, strikes an important balance between "ensuring freedom of deliberations in the jury room" and the competing "paramount need of preserving the integrity of trial by jury". *State v. Agri*, 2012 VT 4 Para .17, 191 Vt. 162, quoting *Bellows Falls Vill. Corp. v. State Highway Bd.,* 123 Vt. 408, 411 (1963).

Initially in the 1700's courts applied  bright line rule that the testimony of a juror is not available to  impeach the verdict in the case in which her or she participated.  *Bellow Falls*, 126 Vt. at 411; *Vaise v. Delaval*, (1785) 1 T.R. 11; 8 Wigmore, <u>Evidence</u>, § 2353 pp. 682 et seq;  27 Fed. Prac,. & Proc. Evid., Section 6071 (2d ed.).   The Vermont Supreme Court closely guarded the juror deliberation process from review, noting in one 1802 decisions, *Robbins v. Windover*, 2 Tyler 11, 1802 WL756 it was reluctant to "open a novel and alarming source of litigation" that would make it difficult to say when a suit was terminated.  See cases and discussion in *Bellows Falls, supra.*

Over time federal and model state rules of evidence emerged that allowed limited exceptions to the protective common law approach.  A limited exception, allowed under Vermont Rule of Evid. 606(b), and also included in the similar federal rule, is whether "extraneous prejudicial information was improperly brought to the jury's attention".

Much of Ms. Mims' affidavit and deposition involves her statements how her sexual abuse past experiences may or would have influenced her Williams jury deliberations. This kind of testimony is clearly barred as a form of  "any matter or statement  . . .  to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith" covered under the Rule 606(b) exclusion.

Plaintiff argues that the alleged lax or non-thorough questioning of prospective jurors at the voire dire in the case was a form of "extraneous prejudicial information . . . brought to the jury's attention" excepted by Rule 606(b)'s prohibition against use. Mr. Williams seeks to use a juror testimony not to show information given or not given to jurors that was used in their deliberations, but Mr. Williams' own lawyer's alleged failings by what he did, or did not do, in picking the jury.

Former Judge (and now Associate Justice) Harold Eaton has observed, "[t]he exception to Rule 606(b) normally involves situations where the jury has been exposed to prejudicial information from some extrinsic source-such as a newspaper editorial bitterly denouncing one of

the trial participants, *Bellows Falls Village Corp.,* 123 Vt. at 409, or the court officer introducing additional evidence into the proceedings by pacing off for the jury, during deliberations, 'the distance from which the defendant allegedly shot the victim.' *State v. Corey,* 151 Vt. 325, 326-27 (1989). *Buker v. King,* 2009 WL 5454432, Docket No. 523-11-05 Wrcv (8/5/09).

Former trial court judge (and then Vermont Supreme Court Associate Justice and now U.S. District Court Judge) Geoffery Crawford has similarly noted that under Vermont Rule 606:

> "extraneous prejudicial information" generally means newspaper accounts, internet searches, or unofficial visits by a juror to the relevant location. *State v. Abdi*, 2012 VT 4, 191 Vt. 162 (juror researched cultural background of defendant); *State v. McKeen*, 165 Vt. 469 (1996) (juror discussed details of case with friend at a bar and told fellow jurors street value of cocaine); *Bellows Falls Vill. Corp. v. State Highway Bd.*, 123 Vt. 408 (1963) (one juror visited premises at issue and several jurors read an editorial with a very biased review of the case)"

*Heco v. Johnson Controls, Inc.*, 2013 WL 6978667, Docket No. S08692010, (11/1/13).

The court does not find Ms. Mimms' observations or proffered testimony as to her reaction to the jury questioning falls within the "extraneous prejudical information . . . brought to the jury's attention" for several reasons.

The information was not from an extrinsic source - that is some source other than the open court proceedings in the public, and recorded, jury trial proceedings. As noted, other Vermont judges have limited the "extraneous" prejudicial information exception to information received by the jury outside of the trial process itself. The court believes the "extraneous" nature of the information means it has to come from some source ***other than*** *the trial proceedings themselves*. For criminal trials, the right to representation of counsel, to make trial objections and rulings; to make post trial motions, to bring appeals, and to pursue ineffective assistance of counsel claims for ineffective counsel – all serve as protections to a fair trial. What is said or done (or not said or done) at a trial hearing is preserved via an official record (recordings and/or stenographer transcript) and is subject to review and correction. Such proceedings are intrinsic to the trial. It is an unwarranted expansion of Rule 606(b)'s limited exception to characterize such core trial proceedings as a form of "extraneous" prejudicial information. If Rule 606(b) became the vehicle for a defendant to seek to overturn a trial result based on jurors' alleged post-trial reactions to the open court proceedings, courts would be opening "the novel and alarming source of litigation" the *Robbins* Court warned against in 1802.

These kinds of considerations caused United Supreme Court to apply the Rule 606(b) "no impeachment" doctrine to bar use of juror evidence of alleged lying of a juror during voire dire. In *Warger v. Shauers*, 135 S.Ct. 521, 190 L.ed.2d 422 (2014), after a civil verdict was rendered the losing party sought to proffer evidence that the juror forewoman failed to disclose bias during voire dire. The *Warger* Court found that Rule 606(b) generally applies to contentions about a juror lying during voire dire, even if those events did not occur in the jury room. The Court reasoned when voire dire dishonesty is being asserted to overturn a verdict it "entails an inquiry into the validity of [the] verdict" under the initial portion of Rule 606(b) that generally bars use of juror testimony. The *Warger* Court concluded even if the juror had lied at voire dire to conceal bias, other protections adequately provide assurance of juror impartiality – namely

"the parties' ability to bring to the court's attention any evidence of bias before the verdict is rendered, and to employ non-juror evidence even after the verdict is rendered". 135 S.Ct. at 529. This accords with this court's reasoning stated above as to the error and unfairness protections afforded to uncover alleged irregularities in the open court proceedings.

The *Warger* Court declined to apply the Rule 606(b) "extraneous" prejudicial information" exception, taking a slightly different view of the "extraneous" term than this court. The *Warger* Court reasoned "extraneous" meant to derive from a source "external" to the jury, such as publicity and information related specifically to the case the jurors were meant to decide. The *Warger* Court explained by contrast "internal" information (still protected under Rule 606(b)) is the experiences that jurors bring with them to the jury room, including general views about case issues, derived from the jurors' life experiences, but as to which experiences the subject juror does not provide any specific information to the jury group during the trial and deliberations. 135 S.Ct. at 529. Under this *Warger*-infused view, Ms. Mimms' unexpressed personal sexual abuse experiences, not being shared with her jurors, was an "internal" form of information she brought for herself to the jury room. It is not included within the "extraneous information" Rule 606(b) exception.

In considering the motion in limine the court has considered the fact that this matter involves proceedings in Mr. Williams' prior criminal trial.

Although the Sixth Amendment gives criminal defendants some protections, the United States Supreme Court has concluded Rule 606(b) still precludes a criminal defendant from introducing evidence that multiple jurors had been intoxicated during trial. It has rejected the contention that the Rule 606(b) exclusion's application violated the defendant's Sixth Amendment right to " 'a tribunal both impartial and mentally competent to afford a hearing.' " *Tanner v. Murray*, 476 U.S. 28, 36, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). The *Tanner* Court reasoned the defendant's right to an unimpaired jury was sufficiently protected by *voir dire,* the observations of court and counsel during trial, and the potential use of "nonjuror evidence" of misconduct. 483 U.S., at 127, 107 S.Ct. 2739. This is in accord with what this court has stated above and the *Warger* Court's similar observations in the civil context.

As the State describes in its brief, in *Pena-Rodriguez v. Colorado*, 137 S.C.t 855, 867, 197 L.Ed.2d 107, (2017), the United States Supreme Court recently weighed the policies against the "no impeachment" common law rule, and the similarly worded federal Rule of Evidence 604 to carefully consider when fundamental fair trial concerns and constitutional limitations may warrant other exceptions to the "no impeachment" rule. So far the only exception that has been recognized where "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant". *Id.*

As described in the *Tanner* Court's "external/ internal" analysis, the court believes the extraneous information exception does not reach information that a single juror may believe impacted his or her conduct, but which information never reached the jury room to impact the full jury. The exception is limited to what is brought to the "*jury's* attention" (emphasis added), not something one juror allegedly thought about, but never expressed, and which impacted that silent juror's deliberative process. The exception does not serve as a tool to ferret out jurors' post trial reactions to trial proceedings or facts that they may have further pondered after trial

when questioned. The "extraneous information" exception relates to information that may have improperly influenced they jury's deliberations as a group. One court has characterized the identically stated portion of the federal rule as referring to "extra-record facts introduced into the jury room". *Lopez v. Aramark Uniform & Career Apparel, Inc.*, 417 F. Supp.2d 1062, 1072 (N.D. Io. 2006).

As noted below, Vermont cases recognize that jurors are not allowed to testify about if or how "extraneous information", when they have been exposed to it, influenced their verdict. The Supreme Court has cautioned that under Rule 606(b)'s limitations "courts will not consider attempts through the jurors themselves to establish misconduct occurring during jury deliberations concerning the mental processes or arguments of jurors." *Labate v. Rutland Hospit*al, 2015 VT 38, Para. 16, 200 Vt. 438, 448. The court agrees with the State that to allow Ms. Mimms' testimony to be admitted and used as requested by Plaintiff, crosses the line into such inadmissible uses.

Based on these considerations, the motion in limine to exclude testimony from Ms. Mimms in this matter is GRANTED.

As an additional consideration, the court notes that even if the proffered Mimms' testimony might otherwise be relevant, it appears to be inadmissible for other reasons. Even if Ms. Mimms were allowed to testify as to the lack of individualized sexual abuse history questioning at voire dire, as a form of "extraneous information", Vermont law is quite clear that she is not permitted to testify whether the information influenced her or the verdict. See *State v. Abdi*, 2012 VT 4, Para. 17, 191 Vt. 162, 171-172. See also *State v. Hudson,* 163 Vt. 316, 324, 658 A.2d 531, 536 (1995) (holding that trial court inquiring into claim of extraneous prejudicial information under Rule 606(b) "properly refused to consider statements by the jurors as to what may have influenced their deliberations"); *State v. Forte,* 159 Vt. 550, 561, 624 A.2d 352, 359 (1993) (observing for benefit of trial court on remand that we "seriously question the interrogation of the jurors on their reaction to the evidence"). Jurors at most may only testify "as to whether extraneous prejudicial information was brought before them." *Abate, supra*.

Assuming the alleged voire dire questioning lapses are "extraneous information" for Rule 6060 (b) purposes (which the court does not find), if Ms. Mimms' was allowed to offer such limited testimony, she would merely testify as to what was asked or not asked at voire dire (and not its impact on her or her reactions). *Labate, supra; Abdi, supra*. A quick facial review of Ms. Mimms' deposition and affidavit, shows she has a very sketchy recall of the voire dire. It appears that the voire dire transcript (attached to the State's related motion for summary judgment) shows Ms. Mimms' recall is inaccurate as to whether the panel had been asked if they were hesitant to sit on a case involving domestic and sexual assault. If Ms. Mimms was proffered merely to testify what occurred at the voire dire, even her statements of what she thinks Mr. Williams' counsel said would be misleading or confusing, and cumulative as compared simply to the introduction and use of the recorded transcript of the proceeding. Given Ms. Mimms' inability to testify about the *impact* of the voire dire on her deliberations (even if the evidence was otherwise admissible under Rule 606(b)), at best she would testify as to what occurred. In that regasrd her recollection of what occurred is not the relevant issue – just what transpired.

There would be significant Rule 403 issues as to whether Ms. Mimms' testimony should be allowed given the availability and opportunity to admit the hearing transcript. If what was asked or not asked at voire dire were found to possibly be "extraneous information", which the court does not find, the fact it was "brought to the jury" would be shown by the voire dire transcript and Ms. Mimms' testimony would not be needed.

In other words, to the extent what Mr. Maguire asked or did not ask the jury panel is relevant to Mr. Williams' ineffective assistance of counsel claims, such evidence is readily available by the mere introduction of the voire dire transcripts. Sketchy recollections of persons in the room (including jurors and non jurors) serve as a poor substitute, and are wrought with confusion or unfair prejudice by inaccurate recollections. Rule 606(b)'s mandate is that Ms. Mimms' unstated reaction to the voire dire (or its impact on her) are not admissible. Those types of statements are "precisely the kind of 'statement during deliberations' or 'mental process' toward which Rule 606(b) provides impermeable prophylaxis". *Newman v. Hobbs*, 2004 WL 5460787, Docket No. 1164-01Cncv, (1/2/04)(Katz, J.), citing Tanner, supra.

## ORDER SUMMARY

The motion in limine to exclude testimony from Ms. Mimms in this matter is GRANTED.

Because this motion is tightly integrated to the State's Motion for Summary Judgment, as stated in the court's 4/25/17 entry order, the Plaintiff shall have 30 days from the date of entry of this order to file its opposition to the State's motion for summary judgment. Thereafter the State will be afforded a Rule 6/ Rule 78 reply brief opportunity on its summary judgment motion.

Electronically signed on July 28, 2017 at 12:12 PM pursuant to V.R.E.F. 7(d).

_____

Michael J. Harris
Superior Court Judge

Notifications:
Seth E. Lipschutz (ERN 3161), Attorney for Plaintiff Alphonso Williams
John R. Treadwell (ERN 2213), Attorney for Defendant State of VT
Zachary Jian Chen (ERN 7294), Attorney for party 2 Co-counsel
Zachary Jian Chen (ERN 7294), Attorney for party 2 Co-counsel