NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 37

No. 2019-069

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Criminal Division |
| | |
| Loren Kandzior | December Term, 2019 |

Michael S. Kupersmith, J. (Ret.), Specially Assigned

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Wesley, Supr. J. (Ret.),
        Specially Assigned


¶ 1.    **CARROLL, J.**    Defendant, Loren Kandzior, challenges his conviction on one count of sexual assault in violation of 13 V.S.A. § 3252(a) on two grounds. First, defendant argues that the trial court erred by excluding evidence of a prior false rape allegation. Second, defendant argues that his right to a fair trial was violated because the jury was exposed to "extraneous, highly prejudicial information"—namely, the substance of an undetermined number of bench conferences that occurred during the three-day trial. We conclude that the trial court committed plain error by failing to investigate when it became aware that the jury may have overhead numerous bench

conferences during defendant's trial.  We accordingly vacate defendant's conviction  and remand for a new trial.[1]

## I.  Facts

¶ 2.     In July 2017, defendant was charged with one count of sexual assault.  A three-day trial was held in August 2018.   On the third day of trial, during defense counsel's cross-examination of the alleged victim, the prosecutor asked to approach the bench.   The court conducted a bench conference (hereinafter the "specific bench conference") during which counsel discussed the relevance of a particular line of questioning.  Immediately after the specific bench conference, the prosecutor asked to approach again and informed the court that someone had told her that "she could hear everything we were saying" at the bench conferences.[2]  Defense counsel quickly asked the court to instruct the jury to strike anything they may have heard.   After an indiscernible exchange, defense counsel repeated that she did not "have a problem with [the court] just telling [the jury] if they heard us up here, to strike whatever they heard."

¶ 3.     After the bench conference concluded, the court had the following exchange with the jury:

> The Court: Jurors, have you all been able to hear us?  Yes?  Don't pay attention to it.
>
> Unidentified Juror: Can hear the white noise, but—
>
> The Court: I don't understand.  I've got my hand on the mute button.  We have the white noise machine.  Have you heard us throughout the trial?  No?
>
> Unidentified Juror: Yeah.
>
> The Court: Yes.  Some could, yes.

---

[1]  Because we conclude that the trial court committed plain error by failing to investigate the jury taint, we do not address defendant's argument regarding the prior false rape allegation. State v. Dubaniewicz, 2019 VT 13, ¶ 13 n.2, ___ Vt. ___, 208 A.3d 619.

[2]  It is not clear from the record who the prosecutor was referring to.  Defendant alleges the prosecutor was referring to the victim advocate.  The State, on the other hand, says only that "someone" told the prosecutor.  Who exactly the prosecutor was referring to is irrelevant to our analysis.

Unidentified Juror: You can hear noise. I haven't been able to hear what you're saying.

The Court: Just shows you how good this equipment is. (Indiscernible) wrong. I should turn it off. I don't know. Okay, well, the reason we huddle up here is so you can't overhear us. So you can't unring the bell, but do the best you can.

¶ 4.     Following this exchange, defense counsel did not move for a mistrial. Instead, she said "[a]ll right, Judge" and proceeded with her cross-examination of the alleged victim. That same day, the jury returned a guilty verdict. Following conviction, defense counsel filed several post-trial motions, including a motion for a new trial pursuant to Vermont Rule of Criminal Procedure 33. In the motion, defense counsel alleged that the "jury overheard every bench conference" and argued that this fact alone entitled defendant to a new trial.

¶ 5.     In a written decision and order, the trial court denied the motion for a new trial for several reasons. First, the court pointed out that upon learning the jury may have overheard bench conferences throughout the trial, the only remedial action defense counsel requested was an instruction asking the jury to strike whatever they heard. The court complied and defense counsel made no other objection.

¶ 6.     Second, the court emphasized that it was not clear what bench conferences the jury overheard. The court explained that when it asked the jury members what they heard, they gave equivocal answers. Although one juror responded that he heard the specific bench conference, he stated that he could not hear what was said. From this response, the court assumed that it was unlikely the jury overheard the words spoken at bench conferences because other persons besides the jury were in the courtroom—namely, court personnel and trial assistants for the State and defendant. Given the presence of these other people, the court concluded that "if the actual conversations were overheard, these persons would have called that fact to the [c]ourt's attention."

¶ 7.     Finally, assuming the jury overheard bench conferences throughout the trial, the court concluded that defendant failed to demonstrate he was prejudiced. The court explained that

3

many of the bench conferences were not prejudicial. It cited as an example the specific bench conference, which "involved only a discussion about what counsel hoped to develop during a line of cross-examination."

¶ 8. Defense counsel moved for reconsideration, arguing that the court should either order a new trial or hold an evidentiary hearing to determine what the jurors heard. The court denied the motion to reconsider. It concluded that it cured any possible prejudice by instructing the jury to strike whatever they may have heard. It also concluded that defendant "waived" his right to have the jurors questioned because he did not ask the court to voir dire the jury when he learned of the problem. Finally, the court reiterated that defendant was not prejudiced because it was "confident that the only bench conference that the jury might have overheard was the 'specific' conference." Defendant timely appealed.

¶ 9. On appeal, defendant argues that he did not waive his right to a fair trial by an untainted jury. Citing State v. Woodard, 134 Vt. 154, 158, 353 A.2d 321, 323 (1976), defendant argues that "the right to a fair trial by jury is so fundamental that it can be raised at any time." Second, regardless of any action—or lack thereof—taken by defense counsel, defendant maintains that "the trial court had an independent duty to investigate the taint." Moving to the merits, defendant argues he is entitled to a new trial because the record establishes that an irregularity occurred—i.e., the jurors overheard bench conferences throughout the trial—that had the capacity to affect the verdict. Alternatively, defendant argues that under the plain-error standard, "[t]he mere capacity for extraneous influence upon the jury warrants reversal."

¶ 10. In response, the State argues that defendant waived the jury-taint claim because he did not immediately move for a mistrial. "Nothing in Vermont law," the State asserts, "suggests that defense counsel's conduct cannot operate as a waiver of further investigation into juror taint." Regardless, on the merits, the State contends that the trial court correctly determined that a new trial was not required. The State emphasizes that the record is unclear as to which bench conferences the jury heard and, assuming the jurors heard the bench conferences, it disputes their

4

prejudicial nature. Alternatively, the State argues that the case should be remanded for a hearing to determine what the jurors heard.

¶ 11. Because defense counsel did not immediately move for a mistrial upon learning that the jury may have overheard various bench conferences, the jury-taint claim was not preserved. Nevertheless, we hold that the trial court committed plain error by failing to voir dire the jury when it learned of the possible jury taint. Without a voir dire, the trial court lacked an evidentiary basis to determine whether defendant was prejudiced. We accordingly vacate defendant's conviction and remand for a new trial.

## II. Analysis

¶ 12. Defendant argues that the trial court erred in denying his post-trial motion for a new trial because the jury heard highly prejudicial, extraneous information. Rule 33 permits the trial court, on motion from a defendant, to "grant a new trial . . . if required in the interests of justice." The decision on a motion for a new trial "is normally entrusted to the discretion of the trial court." State v. McKeen, 165 Vt. 469, 472, 685 A.2d 1090, 1092 (1996). Under the abuse-of-discretion standard, "a claim of error can be supported only where the trial's court discretion was either totally withheld, or exercised on clearly untenable or unreasonable grounds." State v. Messier, 2005 VT 98, ¶ 15, 178 Vt. 412, 885 A.2d 1193.

¶ 13. Where a defendant fails to timely move for a new trial, however, we review for plain error. See Woodard, 134 Vt. at 156, 353 A.2d at 322 (assuming that defense counsel failed to raise issue before trial court and reviewing for plain error). Plain error consists of "glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Oscarson, 2004 VT 4, ¶ 27, 176 Vt. 176, 845 A.2d 337 (quotation omitted). "To reverse on plain error, we must find not only that the error seriously affected substantial rights, but also that it had an unfair prejudicial impact on the jury's deliberations." Id.

¶ 14.    We conclude that defendant failed to timely move for a mistral and review for plain error.  Nevertheless, we conclude that this is one of the "rare and extraordinary cases" where plain error occurred.  State v. Turner, 145 Vt. 399, 403, 491 A.2d 338, 340 (1985).

## A.  Preservation

¶ 15.    The trial court denied the post-trial motion for a mistrial in part because the only remedial action defense counsel requested was an instruction asking the jury to strike whatever they heard.  The court elaborated on this reasoning in denying the motion to reconsider, explaining that defendant "waived" his right to have the jurors questioned because defendant did not ask the court to voir dire the jury when he learned of the problem.

¶ 16.    Although the trial court used the word "waived," defendant's failure to timely move for a mistrial is a preservation—not a waiver—issue.  While often used interchangeably, waiver and preservation are different concepts.  Preservation refers to whether a litigant specifically raised an issue with the trial court, thereby giving the court "a fair opportunity to rule on it."  State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994).  The "purpose of the preservation rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review."  In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270-71 (2001); see also State v. Griffin, 152 Vt. 41, 44, 563 A.2d 642, 644 (1989) (explaining that raising issues before trial court gives it an opportunity to take "remedial action" that could "minimize or eliminate any prejudice").

¶ 17.    Waiver, on the other hand, "is the intentional relinquishment or abandonment of a known right."  United States v. Olano, 507 U.S. 725, 733 (1993) (quotation omitted).  "[O]ur decisions authorize a defendant to waive virtually any right, constitutional or statutory, as long as the waiver is knowing, intelligent, and voluntary."  State v. Hance, 157 Vt. 222, 224, 596 A.2d 365, 366 (1991); see also Olano, 507 U.S. at 733 ("Because the right to trial is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not 'error.' ").

6

¶ 18.   Here, although the trial court referred to waiver, it was discussing preservation. The court denied the motion for a new trial in part because defendant did not timely move for a mistrial or ask the court to voir dire the jury and therefore did not preserve his jury-taint claim. The parties' briefing is less than precise and similarly employs the word waiver. The parties appear to agree, however, that the issue on appeal is one of preservation. Defendant argues that "the right to a fair trial by jury is so fundamental that it can be raised at any time." The State, citing a series of cases from other jurisdictions, appears to argue that unpreserved jury-taint claims should be treated no differently than other unpreserved claims—that is, failure to preserve leads to plain-error review.

¶ 19.   We agree with the State that defendant failed to preserve his jury-taint claim. "A defendant cannot gamble on a favorable verdict, but must make prompt objection and motion for mistrial." State v. Bartlett, 137 Vt. 400, 405, 407 A.2d 163, 166 (1979). Accordingly, a defendant must timely move for a mistrial upon learning of possible jury taint. See Bartlett, 137 Vt. at 405, 407 A.2d at 166 (holding that juror-misconduct claim was unpreserved because "defendant did not move for a mistrial when the facts about [the juror] became known")[3]; Silva v. Stevens, 156 Vt. 94, 111, 589 A.2d 852, 862 (1991) (holding that jury-taint claim was unpreserved because defendants "failed to object to the court's curative instruction at trial").

¶ 20.   State v. Woodard does not, as defendant suggests, hold that jury-taint claims can be raised at any time. Rather, in Woodard, the Court assumed that defendant did not preserve a jury-taint claim and engaged in plain-error review. 134 Vt. at 156, 353 A.2d at 322. In sum, to preserve a jury-taint claim, a defendant must timely move for a mistrial.

¶ 21.   In this case, defendant did not move for a mistrial when he learned that the jury may have overheard various bench conferences throughout trial. In fact, defendant did not move for a mistrial until after he was convicted. But, as we have previously cautioned, "[a] defendant

---

[3] In Bartlett, despite using the word waiver, we were addressing a preservation issue.

7

may not gamble on a favorable verdict before urging prejudicial conduct as grounds for a mistrial." State v. Curtis, 145 Vt. 552, 553, 494 A.2d 143, 144 (1985). Because defendant did not timely move for a mistrial, the jury-taint claim was not preserved. We accordingly review for plain error.

### B. Plain Error

¶ 22. Vermont Rule of Criminal Procedure 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, "raising a plain error argument on appeal is not a substitute for raising a timely objection below and it should not be used as such." State v. Erwin, 2011 VT 41, ¶ 14, 189 Vt. 502, 26 A.3d 1. "If this Court were indiscriminately to entertain claims of error which defense counsel expressly—perhaps, strategically—declined to pursue before the trial court, it would encourage counsel, at times when correction is simple, to convey the impression that all is well while preparing to seek reversal in the event of an adverse verdict." Turner, 145 Vt. at 403-04, 491 A.2d at 340-41.

¶ 23. Plain error consists of "glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." Oscarson, 2004 VT 4, ¶ 27. "To reverse on plain error, we must find not only that the error so seriously affected substantial rights, but also that it had an unfair prejudicial impact on the jury's deliberations." Id. In determining whether plain error occurred, we are guided by "cases where we have applied the abuse-of-discretion standard." See State v. Ray, 2019 VT 51, ¶ 9, ___ Vt. ___, 216 A.3d 1274. The "more concrete federal plain-error test" is also a helpful "guide for applying our own plain-error standard." State v. Yoh, 2006 VT 49A, ¶¶ 39-40, 180 Vt. 317, 910 A.2d 853.

¶ 24. Both the United States and Vermont Constitutions guarantee the right to trial by an impartial jury. U.S. Const. amend. VI; Vt. Const. ch. I, art. 10. "This right is coterminous under the United States and Vermont Constitutions." State v. Johnson, 2013 VT 116, ¶ 14, 195 Vt. 498, 90 A.3d 874. Under the abuse-of-discretion standard, a defendant seeking "a mistrial based on alleged jury taint must show that an irregularity—i.e., anything creating any suspicion of

extraneous influences—had the capacity to influence jury deliberations." State v. Amidon, 2018 VT 99, ¶¶ 14-15, 208 Vt. 360, 198 A.3d 27 (quotation omitted). "If an irregularity is shown . . . the opposing party must show that the irregularity in fact had no effect on the jury." State v. Herrick, 2011 VT 94, ¶ 13, 190 Vt. 292, 30 A.3d 1285. Under this abuse-of-discretion standard, we "will not readily overturn the trial court's denial of a motion for new trial." State v. Richards, 144 Vt. 16, 20-21, 470 A.2d 1187, 1190 (1983). "[A] claim of error can be supported only where the trial's court discretion was either totally withheld, or exercised on clearly untenable or unreasonable grounds." Messier, 2005 VT 98, ¶ 15.

¶ 25. Our abuse-of-discretion case law underscores the high burden a defendant has in demonstrating that a trial court committed plain error in denying a motion for a new trial. We are reluctant to overturn a trial court's denial of a motion for a new trial under the abuse-of-discretion standard. See Richards, 144 Vt. at 20-21, 470 A.2d at 1190. And although "[a]buse-of-discretion is a highly deferential standard of review, . . . plain error is even more highly deferential." United States v. Montez, 858 F.3d 1085, 1089 (7th Cir. 2017) (quotation omitted).

¶ 26. Having said that, our jury-irregularity case law, including those cases reviewing for abuse of discretion, helps illustrate why plain error occurred in this case. When we review a trial court's decision using the jury-irregularity framework, the trial court has investigated the possible taint and established the necessary evidentiary basis for determining "if in fact any prejudice has been created." State v. Onorato, 142 Vt. 99, 106, 453 A.2d 393, 396 (1982); see also, e.g., State v. Mead, 2012 VT 36, ¶¶ 13-15, 192 Vt. 1, 54 A.2d 485 (applying jury-irregularity framework where trial court conducted post-trial hearing, which included testimony from juror who had extrajudicial contact with one of state's witnesses); Herrick, 2011 VT 94, ¶ 14 (applying jury-irregularity framework because trial court created basis for determining whether prejudice had occurred by conducting "general and individual[ized] voir dire of the jury"); State v. FitzGerald, 165 Vt. 343, 349-50, 683 A.2d 10, 15 (1996) (explaining that trial court established "a basis for reviewing whether prejudice had been created" in part because it "examined the juror suspected of

9

misconduct under oath"); <u>Onorato</u>, 142 Vt. at 106, 453 A.2d at 396-97 (applying jury-irregularity framework because trial court "exposed the necessary basis . . . through voir dire of the jury").

¶ 27.    When a trial court fails to investigate possible jury taint, however, we cannot apply the jury-irregularity framework because the trial court, and this Court on appeal, has no "basis for determining if any prejudice exists." <u>Onorato</u>, 142 Vt. at 106, 453 A.2d at 396.  We cannot assess whether or how a jury was affected if the trial court does not investigate and establish an evidentiary basis regarding what the jury may have heard.  See <u>Woodard</u>, 134 Vt. at 156-58, 353 A.2d at 323-24.  Accordingly, the failure to investigate possible jury taint and establish an evidentiary basis for determining if the jury was fair and unbiased amounts to plain error.  See, e.g., <u>id</u>. (holding that trial court committed plain error by failing to investigate possible jury taint); <u>Onorato</u>, 142 Vt. at 106, 453 A.2d at 396 (recognizing principle that when trial court fails to voir dire jury, it "lacks a basis for determining if any prejudice exists"); <u>State v. Lafleur</u>, No. 2002-257, 2003 WL 25746029, *3 (Mar. 1, 2003) (unpub. mem.), https://www.vermontjudiciary.org/sites/ default/files/documents/eo02257.pdf [https://perma.cc/5WSF-D2Z6] (concluding that trial court's failure to investigate potential jury taint was plain error because "absent some examination of the jury by the trial court upon discovering the possibility of any prejudice, the trial judge lacks a basis for determining if any prejudice exists, and consequently this Court has no record from which it can determine if the jury was fair and unbiased" (quotation omitted)).

¶ 28.    Normally, to reverse on plain error we must determine that the error affected defendant's substantial rights and had a prejudicial impact on the jury.  <u>Oscarson</u>, 2004 VT 4, ¶ 27. In <u>Woodard</u>, however, we held that when a trial court fails to investigate possible jury taint, plain error occurs regardless of any prejudice.  134 Vt. at 156-58, 353 A.2d at 323-24.  The clear import of this case is that the failure to investigate possible jury taint is a structural error that affects substantial rights and can be corrected without a specific showing of prejudice.

¶ 29.    The United States Supreme Court has speculated that "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome." <u>Olano</u>,

10

507 U.S. at 735. A majority of federal appeals courts have recognized that one of those categories of forfeited error is structural error. See, e.g., United States v. Lockhart, 947 F.3d 187, 200 (4th Cir. 2020) (Wynn, J., concurring) ("Under Rule 52(b) plain-error review, this Court has held that . . . structural errors necessarily affect substantial rights . . . ." (quotations omitted)); Arthur v. United States, 986 A.2d 398, 413 (D.C. Cir. 2009) ("[I]f [the error] is structural in nature, the defendant's substantial rights will be deemed to have been affected, without need for further analysis in the context of the particular trial.").

¶ 30. Structural error involves defects that " 'affect[] the framework in which the trial proceeded, and thus, prevent[] the trial from serving its function as a vehicle for determining the guilt or innocence of the defendant.' " State v. Muscari, 174 Vt. 101, 116-17, 807 A.2d 407, 419 (2002) (quoting In re Hunt, 163 Vt. 383, 387, 658 A.2d 919, 922 (1995)). Structural error is distinguished from mere "trial error," which is error that "occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991).

¶ 31. This case law makes clear that a trial court's failure to voir dire the jury after learning of the possibility of jury taint amounts to a structural error that affects substantial rights without regard to prejudice. When the trial court conducts an investigation into a claim of jury taint and establishes an evidentiary basis, we have a record from which we can determine if the jury was fair and unbiased. Without this evidentiary basis, however, there is no record from which we can determine how the jury was affected. Onorato, 142 Vt. at 106, 453 A.2d at 396. In other words, structural error occurs because we cannot "quantitatively assess[]" how the jury was affected. Fulminante, 499 U.S. at 307-08. In this circumstance, "a rule requiring the defendant to show prejudice, or one requiring the state to show lack of prejudice, makes no sense." United States v. Noushfar, 78 F.3d 1442, 1445 (9th Cir. 1996) (quotation omitted).

11

¶ 32.    In sum, we apply two distinct analyses to jury-taint claims depending on whether the trial court investigated the possible taint and established an evidentiary basis regarding what the jury may have heard.  When a trial court investigates possible jury taint, we apply the jury-irregularity framework because the trial court has established an evidentiary basis for reviewing whether prejudice occurred.  FitzGerald, 165 Vt. at 349-50, 683 A.2d at 15.  When a trial court fails to investigate upon discovering the possibility of jury taint, however, plain error occurs because there is no basis for determining whether or how the jury was affected.  Such failure amounts to a structural error that affects substantial rights and can be corrected without a specific showing of prejudice.

¶ 33.    There are two important caveats to the failure-to-investigate analysis.  First, the duty to investigate occurs only when the trial court discovers the possibility of jury taint.  See, e.g., Onorato, 142 Vt. at 105-06, 453 A.2d at 396 (explaining that trial court learned of possible jury taint when juror told the court that he learned "this was a second trial"); FitzGerald, 165 Vt. at 347, 349-50, 683 A.2d at 14-15 (explaining that trial court discovered possible jury taint when public defender "told the court that one of his clients claimed than an alternative juror had discussed the case with neighbors"); Woodard, 134 Vt. at 155-57, 353 A.2d at 322-24 (explaining that "suspicion" of jury taint arose where jury member told court he heard defendant making incriminating statements outside of court).

¶ 34.    Second, given the "diverse array of juror-irregularity cases," Mead, 2012 VT 36, ¶¶ 14-15, trial courts retain broad discretion in how they choose to investigate possible jury taint.  Although trial courts must investigate upon discovering possible jury taint, the method and scope of investigation depends on the circumstances.  Compare Onorato, 142 Vt. at 106, 453 A.2d at 396-97 (holding that trial court established evidentiary basis by conducting voir dire of jury), with FitzGerald, 165 Vt. at 349-50, 683 A.2d at 15 (holding that court did not have "to conduct individual voir dire" because it "examined the juror suspected of misconduct under oath").

12

¶ 35.   In this case, the issue is whether the trial court committed plain error in denying defendant's post-trial motion for a new trial based on alleged jury taint.  There is no dispute that the trial court was aware of possible jury taint: the prosecutor informed the court that someone had told her that "she could hear everything we were saying" at the bench conferences.  Based on the principles outlined above, the remaining inquiry in our plain-error analysis is whether the trial court investigated and established an evidentiary basis to support its conclusion that the jury was fair and unbiased.  If the court failed to investigate, plain error occurred.

¶ 36.   The State argues that the trial court established an evidentiary basis because it made an inquiry of the jury and three jurors gave ambiguous responses about what they heard.  We cannot agree.  Although the trial court asked the jurors two questions about what they may have heard, this was an insufficient investigation because the trial court, by its own admission, failed to establish an evidentiary basis regarding what the jury may have heard.

¶ 37.   The court asked the jurors two rather confusing questions about whether they had been able to hear the bench conferences throughout the trial.  First, the court asked, "have you all been able to hear us?  Yes?  Don't pay attention to it."  Then the court asked if the jury could hear the bench conferences "throughout the trial" and ended the question with, "No?"  The record indicates that there were three responses from an "Unidentified Juror": one response was could "hear white noise," another response was "[y]eah," and a third was you could "hear noise" but could not hear what "you're saying."  Because all three responses are identified as coming from an "Unidentified Juror," we are unable to determine whether these responses came from the same juror or multiple jurors.  The court did not follow up with any of the jurors to determine what exactly they heard.

¶ 38.   The court's denial of defendant's post-trial motion for a mistrial illustrates the inadequacy of the court's investigation.  The court acknowledged that it was "not clear what the jury heard" and that it "did not specifically inquire."  Furthermore, the court repeatedly relies on speculation about what the jurors could or could not hear.  For example, the court says that it

13

"<u>doubts</u> that the bench conversation were actually overheard" and was "<u>confident</u> that the jurors did not overhear any other bench conferences either before or after the specific bench conference." (Emphasis added.)

¶ 39.   "No right is more fundamental to a defendant than a fair trial by jury . . . ." <u>Woodard</u>, 134 Vt. at 158, 353 A.2d at 323.  Given the significance of this right, the trial court's limited questioning of the jury, speculation about what the jury may have heard, and "confidence" that the jury did not overhear bench conferences do not provide a sufficient record for determining "if the jury was fair and unbiased," <u>Onorato</u>, 142 Vt. at 106, 453 A.2d at 396.  Indeed, as the trial court itself admitted in denying the post-trial motion for a mistrial, "[i]t is not clear what the jury heard, either with respect to the specific bench conference or with respect to other bench conferences."   Accordingly, we hold that the trial court committed plain error by failing to investigate and establish an evidentiary basis regarding what the jury heard.

<u>Defendant's conviction is vacated, and the case is remanded for a new trial</u>.

FOR THE COURT:

_____
Associate Justice

14